**JIM BEAM BRANDS CO.,**
Plaintiff–Appellee,

v.

**BEAMISH & CRAWFORD LTD.,**
Defendant–Appellant.

**No. 1148, Docket 90–7994.**

United States Court of Appeals,
Second Circuit.

Argued March 5, 1991.

Decided June 19, 1991.

Mercer L. Stockell, New York City (Jonathan E. Moskin, Pennie & Edmonds, on the brief), for plaintiff-appellee.

Thomas M. Gibson, New York City (Hedman, Gibson, Costigan & Hoare, on the brief), for defendant-appellant.

Before KEARSE, PRATT and McLAUGHLIN, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Beamish & Crawford Ltd. ("Beamish & Crawford" or "B & C") appeals from a final judgment of the United States District Court for the Southern District of New York, Richard Owen, *Judge*, in favor of plaintiff Jim Beam Brands Co. ("Jim Beam") on its complaint alleging, *inter alia*, trademark infringement and false designation of origin, in violation of the Lanham Act (the "Lanham Act" or "Act"), 15 U.S.C. § 1051 *et seq.* (1988), and state-law claims of trademark dilution and false advertising. The district court, granting summary judgment, permanently enjoined B & C from using the mark BEAMISH in the United States on its imported alcoholic beverage, ruling that B & C was collaterally estopped from contending that use of this mark was not likely to cause confusion with the marks of Jim Beam. On appeal, B & C contends principally that the district court (1) erred in its collateral estoppel ruling, and (2) erred in failing to consider the equities before issuing the injunction. For the reasons below, we conclude that collateral estoppel was not applicable, and we vacate the judgment and remand to the district court for further proceedings.

## I. BACKGROUND

Since approximately 1795, Jim Beam has marketed various alcoholic beverages in the United States, principally bourbon and blended whiskey. It uses the name "BEAM" or some form or extension thereof such as "BEAM'S" or "JIM BEAM," in its trademarks. Its marks are registered with the United States Patent and Trademark Office. Jim Beam has never produced or marketed beer, ale, or stout.

Beamish & Crawford is a company formed in Ireland in 1792 as the result of an agreement between William Beamish and William Crawford, merchants in the City of Cork, and two local brewers. Its president at the time of this litigation was R.P. Beamish. For nearly two centuries, it has sold stout outside of the United States under the label BEAMISH. B & C claims that it began selling its BEAMISH stout in the United States in 1950. In August 1983, B & C obtained United States trademark registration of the BEAMISH mark for use on its stout.

### A. The Cancellation Proceeding and the Federal Circuit Decision

In November 1983, Jim Beam petitioned the Trademark Trial and Appeal Board (the "TTAB" or "Board") to cancel B & C's BEAMISH registration, contending that the BEAMISH mark was likely to cause confusion with Jim Beam's BEAM name and its family of registered trademarks. Following discovery and a trial, the TTAB denied Jim Beam's petition. In an opinion dated February 24, 1988 ("Board Decision"), the Board concluded that Jim Beam had introduced insufficient evidence to prove public awareness of a BEAM family of marks, and the Board therefore compared the BEAMISH mark only to the two Jim Beam marks most similar to it, i.e., BEAM and JIM BEAM. The TTAB found that these two had become famous marks for whiskey, that Jim Beam's whiskey was sold in some of the same retail channels as B & C's stout, that it was likely to be advertised in the same publications, and that it could be purchased by the same customers. Nonetheless, the Board found

that there was no evidence in the record that consumers were likely to believe that the whiskey and the stout, which are "distinctly different products," id. at 10, came from the same source; and it found that confusion as to source was unlikely in light of the lack of identity of B & C's and Jim Beam's registered marks:

> The fame of [Jim Beam's] "BEAM" and "JIM BEAM" marks would carry more weight in this case if the mark applied to [B & C's] stout were the identical mark that has become famous in connection with bourbon whiskey, namely, "BEAM". Instead, [B & C's] mark is "BEAMISH," a mark which, although it contains the four letters which compose [Jim Beam's] famous mark, is, nonetheless, easily distinguishable from [Jim Beam's] mark in appearance and pronunciation. [Jim Beam] argued at the oral hearing in this case that the "-ISH" portion of [B & C's] mark means "of or belonging to" (Webster's Third New International Dictionary, unabridged) and, thus, that [B & C's] mark "BEAMISH" would suggest to purchasers that the stout bearing that mark was a product "of or belonging to" BEAM. We find no evidence of record tending to show that purchasers would have such a reaction upon seeing [B & C's] mark "BEAMISH". Although [B & C] offered no evidence to prove that purchasers would view "BEAMISH" as a surname, the record (i.e., the registration file of [B & C's] "BEAMISH" registration) does disclose that the "BEAMISH" registration issued on the Supplemental Register on account of the surname significance of [B & C's] mark.

Board Decision at 12.

Jim Beam appealed this decision to the United States Court of Appeals for the Federal Circuit. In an unpublished decision dated February 1, 1989 ("Federal Circuit Decision"), that court reversed the Board. The court noted that the TTAB had found that whiskey and stout were distinctly different products, that Board findings were not to be overturned unless clearly erroneous, and that it did "not deem this finding by the board clearly erroneous." Id. at 3. Instead, the court ruled that

likelihood of confusion is a legal matter to be decided by the reviewing court, and it concluded that confusion was likely. It concluded that the TTAB had erred by according "undue weight to the dissimilarities in the goods and in the marks." *Id.* at 5. The court stated:

> Another factor to consider ... is the similarity of the marks in their entireties as to appearance, sound, connotation, and commercial impression. Furthermore, ... it is proper to give greater force and effect to a mark's dominant feature.... In this case, it cannot be disputed that the word BEAM is the dominant feature in B & C's mark BEAMISH and in all of Beam Distilling's trademarks. While we agree with the board that the marks are not identical, we disagree with the board's characterization of the marks as "only somewhat similar in appearance." Again, we conclude that the board assigned undue weight to this finding....

*Id.* at 4. As a result of the Federal Circuit's decision, B & C's registration for BEAMISH was cancelled in March 1989.

## B. *The Present Infringement Action*

In August 1989, Jim Beam commenced the present action alleging, *inter alia*, trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), and trademark dilution and false advertising in violation of state law, and seeking an injunction against any use by B & C in the United States of the BEAMISH mark and any other mark that might be confused with Jim Beam's marks. After a year of discovery, Jim Beam moved for summary judgment, contending that, as a result of the Federal Circuit's decision, B & C was barred by principles of res judicata and collateral estoppel from relitigating the issue of likelihood of confusion.

B & C opposed Jim Beam's motion, arguing principally (1) that res judicata and collateral estoppel were inapplicable because (a) the factual context of the Federal Circuit decision was different, and (b) the factual circumstances had materially changed since the cancellation proceeding; and (2) that even if there were a likelihood of confusion, the equities favored B & C and required that it not be enjoined from using the BEAMISH mark on its stout. In its opposition to Jim Beam's collateral estoppel contention, B & C argued that the mark adjudicated administratively and in the Federal Circuit was merely the typewritten word BEAMISH, rather than the mark as it actually appears on the product as marketed; it urged the court to consider the product labels, which it contended were dissimilar. It also contended that the Federal Circuit's decision could not constitute collateral estoppel on the likelihood-of-confusion question because certain members of Jim Beam's family of BEAM registrations had expired.

In support of its contention that the equities required that it not be enjoined from using the BEAMISH mark in the United States, B & C pointed out that it had been using this mark for nearly two centuries; that Beamish was the surname of one of its founders and of its current president; that it had begun using BEAMISH in the United States several decades ago; and that there was no likelihood that the gap between Jim Beam's use of its mark for whiskey and B & C's use of its mark for stout would be bridged, since Jim Beam had no plans to market, and had never considered marketing, stout. In addition, B & C produced an August 1986 "awareness study" (the "1986 study"), obtained during discovery in the present action, which had been commissioned by Jim Beam and showed no strong association in the public's mind between the mark "BEAM" and Jim Beam's products.

Jim Beam disputed B & C's contentions as to the lack of similarity of the two companies' labels, contended that it had not conducted the 1986 study, and asserted that, in any event, that study was flawed in design. It submitted the preliminary results of a survey conducted in 1990 ("1990 survey"), purporting to show consumer recognition of the mark BEAM for "beer, wine and liquor." Jim Beam also stated that although Jim Beam did not currently market stout, beer, or ale, and did not have any immediate plans to do so, it had con-

sidered marketing a beer product on numerous occasions.

In an Opinion and Order dated October 15, 1990 ("District Court Decision"), 1990 WL 160891, the district court granted summary judgment to Jim Beam, finding that it was entitled to "appropriate injunctive relief" on each of its claims on the ground that the Federal Circuit decision foreclosed relitigation of the issue of likelihood of confusion. *Id.* at 8. Though ruling that res judicata was inapplicable because the cause of action for cancellation was significantly different from the cause of action for infringement, the court concluded that principles of collateral estoppel did apply:

> Although the legal issue in the cancellation proceeding was the right to register a mark and the legal issue in the infringement action is the right to use a mark, nevertheless the issue of whether the marks are likely to cause confusion has the same meaning in both proceedings and is central to both determinations.

*Id.* at 3–4.

The court found it unnecessary to compare the respective marks as they actually appeared on the labels in order to determine whether they were confusingly similar:

> Defendant claims that its label is less similar to plaintiff's mark than is its typewritten mark. However, the TTAB, comparing only the typewritten mark, found the marks to be dissimilar. In overturning the TTAB, the Federal Circuit did not reverse the TTAB's findings of fact but rather held that the trial board gave undue weight to its findings of the dissimilarity in the goods and in the marks. The Federal Circuit held that a proper weighing of the factors set forth in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357 (CCPA 1973), including "the similarities in the goods, the similarities in the marks, the similarity of trade channels, the absence of third-party marks containing the word BEAM in use on any type of beverages, and the considerable fame Beam Distilling's trademarks have acquired," led to a find-

ing of likelihood of confusion. Thus, even if comparison of defendant's label would indicate a greater dissimilarity in appearance of the parties' marks than did the typewritten registration name, this fact would be immaterial to the Federal Circuit's decision.

District Court Decision at 5–6 n. 2.

The court found no material change in the circumstances since the Federal Circuit decision. It concluded that the expiration of certain of Jim Beam's BEAM marks did not constitute a material change because the cancellation determination had been based on a comparison of the BEAMISH mark with the BEAM and JIM BEAM marks and not with the entire family of BEAM registered marks. It also found that because the 1986 survey sampled members of the public at large rather than focusing on consumers of alcoholic beverages, it provided "an insufficient showing of a change of circumstance with regard to public awareness of plaintiff's mark," because the "more recent survey commissioned by plaintiff this year demonstrates that among consumers of alcoholic beverages a high awareness of the mark 'BEAM' exists." *Id.* at 6 n. 2.

Accordingly, the court stated:

> While I regret prohibiting a party from marketing a product here under its well-established name abroad, I conclude that I am obligated by the doctrine of collateral estoppel to adopt the Federal Circuit's earlier finding of likelihood of confusion in this situation and accord plaintiff protection therefrom.

*Id.* at 2–3. Judgment was entered enjoining B & C's use in the United States of the name BEAMISH, and this appeal followed.

## II. DISCUSSION

On appeal, B & C challenges the district court's collateral estoppel ruling on the grounds that (1) the issue of likelihood of confusion in a trademark cancellation proceeding is not the same as the issue of likelihood of confusion in a trademark infringement suit, (2) the material facts have changed since the cancellation proceeding, and (3) likelihood of confusion is not an

element of Jim Beam's state-law claims and hence the prior ruling could not be determinative of those claims. In addition, B & C contends that the district court erred in issuing its injunction without balancing the equities. For the reasons below, we conclude that collateral estoppel was incorrectly applied and that the matter must be remanded for further proceedings.

### A. *Collateral Estoppel*

■ Collateral estoppel, or issue preclusion, prevents the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding. *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); *Commissioner v. Sunnen*, 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Balderman v. United States Veterans Administration*, 870 F.2d 57, 62 (2d Cir.1989); *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 728 (2d Cir.1981); *Restatement (Second) of Judgments* § 27 (1982). Issues that may bear the same label are nonetheless not identical if the standards governing them are significantly different. *See, e.g., Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). If an issue was not actually decided in a prior proceeding, or if its decision was not necessary to the judgment, its litigation in a subsequent proceeding is not barred by collateral estoppel. *See, e.g., Brown v. Felsen*, 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *Balderman v. United States Veterans Administration*, 870 F.2d at 62. These principles make collateral estoppel inapplicable here.

Though worded similarly, the issue of likelihood of confusion in a cancellation proceeding may be different from the issue of likelihood of confusion in an action for infringement. With respect to the former, § 2(d) of the Lanham Act provides, in pertinent part, that a mark is not entitled to registration if it "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office ... as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). With respect to infringement, § 32 of the Act provides, in pertinent part, that infringement actions may be brought against those using or reproducing marks for certain purposes when "such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a) and (b). Thus, both sections refer to whether the use of a mark is likely to cause confusion. When the trademarks are simply a word or words, however, the standards by which that likelihood is judged are different because the factual frame of reference used by the adjudicating body is different.

■ In a proceeding seeking the cancellation of a trademark or opposing an application for registration,

likelihood of confusion is determined only as to the registrability of the applicant's mark exactly as shown in the application and only as to the goods listed, regardless of actual usage. Similarly, if [the party contesting the registration] relies on its own federal registration, its rights are determined as of the format and goods in that registration, regardless of the reality of actual usage.... Thus, an inter partes decision of the Trademark Board, whether reviewed by the CAFC or not, must be carefully examined to determine exactly what was decided and on what evidentiary basis. Many such oppositions and cancellations are decided only upon a limited comparison of the registered or applied-for format and goods without regard for their marketplace manner of use.

2 J. McCarthy, *Trademarks and Unfair Competition* § 32:31, at 737–38 (2d ed. 1984); *see also* 4A R. Callman, *Unfair Competition, Trademarks and Monopolies* § 25.39, at 287–88 (4th ed. 1983) ("*Callman*"). In general, therefore, "a distinction in trade dress cannot weigh against likelihood of confusion with respect to the registration of a simple word mark" because "such dress might well be changed at any time; only the word mark itself is to be registered." *Kimberly–Clark Corp. v. H. Douglas Enterprises, Ltd.*, 774 F.2d

1144, 1147 (Fed.Cir.1985); *see also* 4A *Callman* § 25.39, at 288.

In contrast, in determining the similarity of marks in an infringement action, a court must examine the visual appearance of each mark in the context of its use. *See, e.g., Western Publishing Co. v. Rose Art Industries, Inc.*, 910 F.2d 57, 62 (2d Cir. 1990) (finding no similarity between family of "Golden" marks and "Magnetic GoldenSlate" mark based on their visual appearance and use on products); *Banff, Ltd. v. Federated Department Stores, Inc.*, 841 F.2d 486, 492 (2d Cir.1988) (comparing typefaces in which marks appeared and other features of labels); *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 968–69 (2d Cir. 1981) (upholding district court's finding that potential for confusion in virtually identical marks was reduced by differing visual contexts in which they appeared); *McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1133–34 (2d Cir.1979) (approving district court's consideration of manner in which context reduced the similarity of marks whose typewritten and aural similarity approached identity); *see also King Research, Inc. v. Shulton, Inc.*, 454 F.2d 66, 69 (2d Cir.1972) (finding of no likelihood of confusion in infringement action does not preclude relitigation of that issue in later infringement action upon a material change in trade dress).

In the cancellation proceeding at issue here, the TTAB and the Federal Circuit applied the standard that was appropriate to that proceeding. Thus, though both the BEAMISH and the BEAM labels were part of the administrative record, the TTAB and Federal Circuit discussions of the degree of similarity of the parties' respective marks made no mention of the actual use or appearance of those marks. The TTAB's factual findings made no reference to either party's labels, and its legal conclusions rested solely on the relationship between the appearances and pronunciation of the typewritten marks BEAM and BEAMISH and on the significance of the "–ISH" suffix. The Federal Circuit, in reaching a different legal conclusion, also relied solely on the relationship between the "BEAM" and "BEAMISH" marks in the abstract.

Thus, the district court correctly observed that the TTAB "compar[ed] only the typewritten mark[s]," District Court Decision at 5 n. 2, and, given the standard discussed above for assessing likelihood of confusion in cancellation proceedings, the district court was correct in its observation that comparison of the marks in context was "immaterial to the Federal Circuit's decision," *id.* at 6 n. 2. But that immateriality itself made collateral estoppel inapplicable since a decision as to the likely effect of the marks in context was not necessary to the Federal Circuit's judgment.

In reaching its conclusion that collateral estoppel was appropriate, the district court relied on three cases. One, *Libbey–Owens–Fords Glass Co. v. Shatterproof Glass Corp.*, 165 U.S.P.Q. 335 (E.D.Mich.1970), is unpersuasive because that court relied solely on the similar statutory language in §§ 2(d) and 32 of the Act and gave no indication that it considered, or was asked to consider, any possible differences between the marks as used. The other two, *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375, 377–79 (7th Cir.1984), and *Flavor Corp. of America v. Kemin Industries, Inc.*, 358 F.Supp. 1114, 1117–21 (S.D.Iowa 1973), *aff'd*, 493 F.2d 275 (8th Cir.1974), are distinguishable since those courts ruled that collateral estoppel applied because the TTAB had in fact examined the marks not only in the abstract but also in light of, *inter alia*, the manner in which they were affixed to the products in question and their appearance in sales and advertising materials. Though it is not entirely clear on what basis those courts may have viewed the TTAB's in-context evaluation as necessary to its judgment, the fact that the Board had actually decided the issue of likelihood of confusion of the marks in context makes those cases distinguishable from the present one. The district court here surmised that the Federal Circuit would have reached the same conclusion if it had considered the Jim Beam and BEAMISH marks in context. That supposition, however, even if valid, is not a permissible surrogate for the prerequisite actual decision of the issue.

Jim Beam argues that if we set aside the collateral estoppel ruling, the judgment below may nonetheless be sustained on the ground that the Federal Circuit decision is "res judicata" because "the issues raised and the procedures available in the administrative proceeding were 'in all important respects the same as those in the District Court.'" (Jim Beam brief on appeal at 36, quoting *Union Manufacturing Co. v. Han Baek Trading Co.*, 763 F.2d 42, 45 (2d Cir.1985)). This argument is ill conceived. Res judicata, or claim preclusion, prevents the subsequent litigation by either party of any ground of recovery that was available in the prior action, whether or not it was actually litigated or determined. *See, e.g., Commissioner v. Sunnen*, 333 U.S. at 597, 68 S.Ct. at 719; *Balderman v. United States Veterans Administration*, 870 F.2d at 62; *Tucker v. Arthur Andersen & Co.*, 646 F.2d at 727; *Restatement (Second) of Judgments* § 24. If an injunction against trademark infringement was not available to Jim Beam in the TTAB/Federal Circuit proceeding, obviously res judicata would not apply; but if such relief was available to Jim Beam in those proceedings, that availability would preclude the present pursuit of such a claim by Jim Beam.

In sum, we conclude that the district court erred in ruling that B & C was barred from contending that there was little likelihood of confusion between its BEAMISH mark and Jim Beam's marks as those marks are actually used. Further, in light of the requirement that all reasonable inferences be drawn in favor of the nonmoving party on a motion for summary judgment, *see, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), we see no basis on which the district court could properly have ruled against B & C summarily on the merits of the likelihood-of-confusion issue. Accordingly, we vacate the judgment and remand to the district court for further proceedings.

**B.** *Other Issues*

In light of our remand for further proceedings, a few other matters warrant brief mention. First, to the extent that the district court rejected B & C's contentions on the ground that the 1990 survey showed consumer recognition of the BEAM mark for alcoholic beverages in general, the court does not appear to have drawn all reasonable inferences in favor of B & C as the nonmoving party. If, despite the compound form of its questions (*e.g.,* "Thinking only about beer, wine and liquor, what, if anything, does the name or nickname Beam mean to you?") that survey is eventually ruled admissible in evidence, *see generally Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 118 (2d Cir.1984), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986), it would be the province of the finder of fact to determine what weight to accord the responses.

Second, the district court applied its collateral estoppel ruling not only to the federal trademark issues but also to Jim Beam's state-law claims, treating the latter as if they depended solely on a finding of likelihood of confusion. This treatment was inappropriate, for not only do these claims require the proof of other elements, but as to at least one such claim, likelihood of confusion is not an element. For example, a claim of trademark dilution under New York law involves a determination of such issues as the strength of the senior user's mark, the "'whittling down' of the identity of or reputation of" the mark, and the junior user's predatory intent, *see Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625–26 (2d Cir.1983), and the anti-dilution statute provides that "dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief ... *notwithstanding ... the absence of confusion as to the source of goods or services*," N.Y. Gen. Bus. Law § 368–d (McKinney 1984) (emphasis added). Thus, a finding of actual confusion is not necessary for a dilution claim under New York law, *see Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d at 624–25, and the New York Court of Appeals has ruled that likelihood of confusion also need not be proved, *see Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 544, 399 N.Y.S.2d 628,

632, 369 N.E.2d 1162, 1166 (1977) ("it would be of no significance under our statute that [plaintiff] is not a competitor of, nor likely to be confused with [defendant]"). All issues as to the state-law claims, including B & C's argument that Jim Beam lacks standing to assert them, remain to be litigated in the district court.

■ Finally, B & C has challenged the district court's injunction on the ground that the court had improperly failed to give any consideration to the equities. We agree that a finding of likelihood of confusion in an infringement action does not automatically compel the issuance of an injunction barring use of the junior user's mark. *See, e.g., Soltex Polymer Corp. v. Fortex Industries, Inc.*, 832 F.2d 1325, 1329 (2d Cir.1987); *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d at 969; *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 49 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Rather the court may, after equitably "balancing the conflicting interests of the parties involved," *McGregor–Doniger Inc. v. Drizzle, Inc.*, 599 F.2d at 1140, either determine that no injunctive relief would be appropriate, *see Vitarroz Corp. v. Borden, Inc.*, 644 F.2d at 969; *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d at 48–49, or tailor such relief so as to "avoid confusion in the marketplace, protect a prior company's property interest in its name, and permit an individual to exploit his own identity and reputation in a legitimate manner," *Joseph Scott Co. v. Scott Swimming Pools, Inc.*, 764 F.2d 62, 67 (2d Cir.1985). For example, the court might allow continued use of a mark with a disclaimer where the junior user can meet its burden of proving that the disclaimer would significantly reduce the likelihood of confusion. *See Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.*, 832 F.2d 1311, 1315–17 (2d Cir.1987); *see also Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731 (2d Cir.1978) (modifying district court's preliminary injunction to permit newcomer wine company to use signature of company's owner on label and advertising when accompanied by disclaimer of affiliation with senior wine company).

In sum, "[i]t is one thing for the Patent and Trademark Office to tell an applicant that he may not have a *registration*, even if he has already invested a lot of money in his use of the mark, because all he loses is the benefit of the presumptions and procedural advantages which accompany registration.... [I]t is a far more serious matter for a court to tell a defendant that he may no longer *use* his mark as a result of an injunction." 4A *Callman* § 25.39, at 288 (emphasis in original).

Though the district court here, in connection with its ruling on liability, mentioned factors that had equitable undercurrents, it appeared to reject outright the possibility that equitable considerations could permit it to deny in whole or in part Jim Beam's request for an injunction against B & C's use of the BEAMISH mark in the United States. Thus, in connection with the liability determination, the court stated that while it "regret[ted] prohibiting a party from marketing a product here under its well-established name abroad," it was *"obligated"* to adopt the Federal Circuit's finding of likelihood of confusion and to *"accord plaintiff protection therefrom."* District Court Opinion at 2–3 (emphasis added). If the issue of likelihood of confusion is eventually decided against B & C, the court should weigh the equities in order to determine the appropriateness and scope of any injunctive relief.

## CONCLUSION

For the above reasons, we vacate the judgment and remand to the district court for further proceedings not inconsistent with this opinion. Costs to appellant.