Rabbi Don Yoel LEVY; Eliezer Levy, doing business as Organized Kashruth Laboratories, Plaintiffs/Counter–Defendants/Appellees,

v.

KOSHER OVERSEERS ASSOCIATION OF AMERICA, INC., Defendant/Counter–Claimant/Appellant.

No. 103, Docket 96–7051.

United States Court of Appeals, Second Circuit.

Argued Oct. 3, 1996.

Decided Jan. 9, 1997.

Laurence S. Shtasel, Philadelphia, PA (Kevin P. Cronin, Timothy D. Pecsenye, Blank Rome Comisky & McCauley, Philadelphia, PA, of counsel), for plaintiffs/counter-defendants/appellees.

Bernard Malina, Malina & Wolson, New York City, for defendant/counter-claimant/appellant.

Before: KEARSE, LEVAL and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

The question presented is whether and when a decision of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office should have collateral estoppel effect in a lawsuit claiming violations of the Lanham Act. We consider this question in a case involving conflicting claims with respect to marks used to designate food products as "kosher"—that is, prepared in compliance with Jewish dietary laws.

The defendant Kosher Overseers Association of America, Inc. ("defendant" or "KOA") appeals from an order of the United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge* ) granting the motion for summary judgment of the plaintiffs Rabbi Don Yoel Levy and Eliezer Levy, d.b.a. Organized Kashruth Laboratories ("plaintiffs" or "OK Labs"), and entering an injunction prohibiting the defendant from using certain certification marks. We conclude that the district court erred in granting summary judgment on collateral estoppel grounds and, accordingly, we vacate the judgment and the injunction and remand for further proceedings consistent with this opinion.

## Background

This action, alleging the wrongful use of a trademark by the defendant, concerns two similar kosher "certification marks," also known as hechshers.[1] Certification marks are generally treated the same as trademarks for purposes of trademark law. *See* 15 U.S.C. § 1054.[2] Kosher certification marks are used to designate food items that comply with Judaism's strict dietary laws. A kosher certification mark informs the consumer that a certification agency has examined the manufacturing process, the ingredients, and the cleanliness of the production facilities of a product to insure that the product is kosher. Because the various kosher certification agencies employ their own standards for accepting products as kosher, according to their particular interpretation of Judaism's dietary requirements, it is important for a consumer to recognize the marks of the certification agencies that he trusts. *See Ran–Dav's County Kosher, Inc. v. State,* 129 N.J. 141, 608 A.2d 1353, 1356 (1992) (describing conflicts in Jewish community over legitimacy of various kosher certification authorities); *see also* Gerald F. Masoudi, Comment, *Kosher Food Regulation and the Religion Clauses of the First Amendment,* 60 U. CHI. L. REV. 667, 670–71 (1993) (describing differing interpretations of Jewish dietary laws).

In their complaint in this lawsuit, the plaintiffs alleged that the defendant was using a certification mark confusingly similar to theirs. The plaintiffs' mark, an encircled "K" (the "Circle–K"), has been used by OK Labs or its predecessors in interest since 1936:

(OK Labs' Circle–K certification mark)

The Circle–K mark has been registered in the United States Patent and Trademark Office ("PTO") since 1965. Since at least 1979, KOA, a competing kosher certifica-

---

1. "Hechsher" means "the testimonial by a recognized religious authority, generally a rabbi, that an article, principally food, is 'kosher' or fit, from the standpoint of traditional religious law (Kashruth) for use by Orthodox Jews." 5 THE UNIVERSAL JEWISH ENCYCLOPEDIA 288 (Isaac Landman ed., 1941).

2. The term "certification mark" is defined in 15 U.S.C. § 1127 as "any word, name, symbol, or device, or any combination thereof ... [that is used to] certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of ... goods or services...."

15 U.S.C. § 1054 provides, in pertinent part, as follows:

> Subject to the provisions relating to the registration of trade-marks, so far as they are applicable, ... certification marks ... shall be registrable ... in the same manner and with the same effect as are trade-marks ... and when registered they shall be entitled to [the same] protection provided ... in the case of trade-marks.... Applications and procedure under this section shall conform as nearly as practicable to those prescribed for the registration of trade-marks.

**40**

tion agency, has used a stylized encircled "half-moon" or "circle-crescent" K (the "encircled half-moon K") to signify that a product complies with its kosher standards:

(KOA's encircled half-moon K)

On May 26, 1989, KOA applied to the PTO to register its encircled half-moon K mark. OK Labs filed an "opposition" to the registration with the PTO's Trademark Trial and Appeal Board ("TTAB"). An application for registration may be refused if the mark

[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office ... as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive....

15 U.S.C. § 1052(d). OK Labs claimed before the TTAB that defendant KOA's encircled half-moon K was too similar to its Circle–K and would therefore be likely to cause confusion among consumers. As part of its deliberations, the TTAB considered depositions, exhibits, and briefs, and compared the visual appearances of the two marks. In an initial decision dated December 11, 1991, the TTAB sustained the opposition of OK Labs and refused KOA's application for registration. In doing so, the TTAB rejected KOA's argument that the Circle–K mark was not entitled to protection under the Lanham Act because it is generic and has not acquired secondary meaning, *see* 15 U.S.C. § 1127; *see also L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.,* 79 F.3d 258, 263 (2d Cir.1996), and concluded that it was "of the firm belief that consumers will be likely to confuse the source of the respective certifica-

tion services." The TTAB denied KOA's petition for reconsideration on March 17, 1992.

KOA did not appeal these findings or decisions to the United States Court of Appeals for the Federal Circuit, *see* 15 U.S.C. § 1071, but did continue to use its encircled half-moon K mark. As a result, the plaintiffs brought this action to permanently enjoin KOA from "using a certification mark that the [TTAB had] found to be confusingly similar to the plaintiffs' certification mark." Following discovery, the plaintiffs moved for summary judgment on three of the six counts in their complaint: Counts I, II, and VI alleging violations of the Lanham Act, 15 U.S.C. §§ 1114 (providing cause of action for trademark infringement) and 1125(a) (providing cause of action for false or misleading use of a trademark), and of state unfair competition laws. The plaintiffs based their summary judgment motion on the asserted collateral estoppel effect of the TTAB decisions. Following briefing and oral argument, the district court granted the plaintiffs' motion in a Memorandum and Order dated July 7, 1994, and invited the parties to submit a proposed permanent injunction.

On July 18, 1994, defendant KOA filed a motion for reargument. While that motion was pending before the district court, the defendant submitted two motions for summary judgment, in which it claimed, *inter alia,* that the plaintiffs had no ownership interest in the Circle–K mark and that they had improperly used it as a trademark in violation of 15 U.S.C. § 1064(5)(B) and (C).[3]

In a Memorandum and Order dated April 6, 1995, the district court denied KOA's motion for reargument, and noted that in light of the denial of the motion for reargument, KOA's summary judgment motions could only apply to the counts in the complaint on which summary judgment for the plaintiffs had not already been granted.[4] The court

**3.** 15 U.S.C. § 1064 provides, in pertinent part, as follows:

A petition to cancel a registration of a mark ... may ... be filed as follows
. . . .
(5) At any time in the case of a certification mark on the ground that the registrant ... (B) engages in the production or marketing of any goods or services to which the certification mark is applied, or (C) permits the use of the

certification mark for purposes other than to certify....

**4.** The remaining counts in the complaint included Count III (Violation of Exclusive Rights to Use a Trademark in United States Commerce Under Section 33 of the Lanham Act, 15 U.S.C. § 1115(b)); Count IV (Importation of Goods Bearing a Mark that Simulates the Circle–K Mark in Violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124); and Count V (Importa-

then stated that if the plaintiffs did not intend to pursue these remaining counts, the defendant's summary judgment motions would become moot. The plaintiffs and the defendant subsequently consented to the dismissal of the remaining counts, and on December 6, 1995, the court entered a Final Judgment and Order permanently enjoining the defendant's use of the encircled half-moon K mark. The defendant appeals from the orders (1) entering summary judgment for the plaintiffs on Counts I, II, and VI; (2) denying the defendant's summary judgment motions; and (3) entering the permanent injunction barring the defendant's use of the encircled half-moon K mark.

We vacate the district court's order granting summary judgment for the plaintiffs and the injunction entered by the court in favor of the plaintiffs and therefore do not reach the defendant's other claims on appeal.

### Discussion

■ Where a district court enters summary judgment barring claims under the doctrine of collateral estoppel, we review the decision *de novo*. *Valley Disposal, Inc. v. Central Vt. Solid Waste Management Dist.*, 31 F.3d 89, 93 (2d Cir.1994). *See generally Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996). The record must be considered in the light most favorable to the non-moving party, and all inferences are to be drawn in favor of that party.

■ The doctrine of collateral estoppel, or issue preclusion, provides that "[w]hen an action between two parties terminates in a valid judgment, a later action between the parties may be affected[,] [and possibly barred,] even though it involves a different claim or cause of action." FLEMING JAMES, JR., GEOFFREY C. HAZARD, JR., JOHN LEUBSDORF, CIVIL PROCEDURE § 11.17, at 607 (4th ed. 1992); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). In order to apply the doctrine of collateral estoppel to bar litigation of an issue,

(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986); *see also Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir.1995) (restating four-part test). KOA argues, among other things, that collateral estoppel is inappropriate in the instant case because the issues litigated in the two fora were not identical—it asserts that there was no finding by the TTAB of similarity based on commercial or actual use, as is necessary to find a violation of the Lanham Act or of state unfair competition laws. We agree for the reasons that follow.

■ For collateral estoppel to apply, the issue in the earlier proceeding must be identical to the issue in the later one. *Gelb*, 798 F.2d at 44. In *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729 (2d Cir.1991), we were asked to determine the collateral estoppel effect of a Federal Circuit holding that had reversed a TTAB finding that there was no "likelihood of confusion" between two marks. We pointed out there that the standards governing "likelihood of confusion" in registration cancellation or opposition proceedings before the TTAB and Federal Circuit can be different than the "likelihood of confusion" standard applicable in trademark infringement actions in a district court.

In a proceeding seeking the cancellation of a trademark or opposing an application for registration, "likelihood of confusion is determined only as to the registrability of the applicant's mark exactly as shown in the application and only as to the goods listed, *regardless of actual usage*. Similarly, if [the party contesting the registration] relies on its own federal registration, its

---

tion of Goods Labeled in Contravention of Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a) and in Violation of Section 43(b) of the Lanham Act, 15 U.S.C. § 1125(b)).

rights are determined as of the format and goods in that registration, *regardless of the reality of actual usage.* ... Thus, an inter partes decision of the Trademark Board, whether reviewed by the [Court of Appeals for the Federal Circuit] or not, must be carefully examined to determine exactly what was decided and on what evidentiary basis. Many such oppositions and cancellations are decided only upon a limited comparison of the registered or applied-for format and goods without regard for their marketplace manner of use."

*Id.* at 734 (emphasis added) (quoting 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADE-MARKS AND UNFAIR COMPETITION § 32:31, at 737–38 (2d ed. 1984)).

■ In a trademark infringement action, on the other hand, eight non-exclusive factors—the so-called *Polaroid* factors, *see Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.1961) (Friendly, *J.*)—are considered when determining whether likelihood of confusion exists:

1) the strength of the plaintiff's mark, 2) the degree of similarity between the plaintiff's and the defendant's marks, 3) the proximity of the products, 4) the likelihood that the plaintiff will "bridge the gap" between the two products, 5) actual confusion between the two marks, 6) the defendant's good faith in adopting its mark, 7) the quality of the defendant's product(s), and 8) the sophistication of buyers of the plaintiff's and defendant's goods or services.

*The Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996); *see also Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 740 n. 3 (2d Cir.1994). This is not to say that a TTAB registration proceeding can never have preclusive effect in a later trademark infringement lawsuit. We agree

with the view of a leading commentator that, "where the Trademark Board has indeed compared conflicting marks in their *entire marketplace context*, the factual basis for the likelihood of confusion issue is the same, the issues are the same, and collateral estoppel is appropriate." 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32.31[2], at 32–125 (3d ed. 1996) (emphasis added). For a TTAB or Federal Circuit determination of "likelihood of confusion" to have collateral estoppel effect in a trademark infringement action, the TTAB or the Federal Circuit must have taken into account, in a meaningful way, the *context* of the marketplace.

The Federal Circuit decision we considered in *Beam* only compared the typewritten names and sounds of the two trademarks, and we held that the district court in the later infringement action should have, at least, "examine[d] the visual appearance of each mark in the *context of its use.*" *Beam*, 937 F.2d at 735 (emphasis added). Accordingly, we declined to accord collateral estoppel effect to the Federal Circuit's "likelihood of confusion" determination.[5] In the instant trademark infringement action the district court accorded collateral estoppel effect to the TTAB registration proceeding, in which the TTAB relied solely on a visual examination of the two marks. The TTAB's decision stated in pertinent part that it was

of the firm belief that consumers will be likely to confuse the source of the respective certification services. Not only is applicant's mark insufficiently different from opposers', but also both marks, consisting of the letter K within a circle, are displayed in relatively small size on the products so marked. Only after very careful examination would a consumer be able to

---

5. The appellees also call attention to two decisions of other circuits that have dealt with this issue. *See EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.*, 746 F.2d 375 (7th Cir.1984) and *Flavor Corp. of America v. Kemin Industries, Inc.*, 493 F.2d 275 (8th Cir.1974). In both cases, the TTAB's determination on the issue of "likelihood of confusion" was held to have collateral estoppel effect in subsequent trademark infringement actions where the TTAB had compared the visual *and* commercial uses of the trademarks. In *Beam*, we distinguished these cases on the

ground that the underlying TTAB determination in those cases was based on an examination of the actual or commercial use of the trademarks, whereas the *Beam* TTAB/Federal Circuit decisions were made in the abstract, without regard to their use "in [market] context." *See Beam*, 937 F.2d at 735. In *Beam*, we also expressed concern that the decisions in these other cases may not have adequately addressed the question of whether the Federal Circuit's determination of commercial use was necessary to its decision. *Id.*

discern the slight difference in applicant's mark.

We do not believe that these passing references to consumers, standing alone, are sufficient to show that the TTAB performed a comparison of commercial use *identical* to that required in a trademark infringement action. Moreover, we have held that "no single *Polaroid* factor is determinative." *Plus Prods. v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1004 (2d Cir.1983) ("each [factor] must be considered in the context of all of the other factors, and from a balance of these determinations, one is able to reach the ultimate conclusion, whether there is likelihood of confusion"); *see also Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 391 (2d Cir.1995) (same). While the TTAB might have considered the similarity of the two marks when denying registration to the defendant's mark—the second of the eight *Polaroid* factors noted above—the TTAB decision provides no basis for the conclusion that it examined any of the other relevant *Polaroid* factors.

In sum, the TTAB decision is not the sort of decision contemplated in *Beam*—a decision that required examination of the "entire marketplace context" of the trademarks in dispute, *Beam*, 937 F.2d at 734—and therefore cannot preclude litigation of the trademark infringement action before us. The TTAB's statement that the marks are "displayed in relatively small size on the products so marked" and the proclamation of its "firm belief that consumers will be likely to confuse the source of the respective certification services" are simply not enough to show that the TTAB examined the "entire marketplace context" of the kosher certification marks. *See id.*, 937 F.2d at 735.

Inasmuch as the application of collateral estoppel requires that "the issues in both proceedings be the same," *Gelb*, 798 F.2d at 44, and the TTAB's inquiry as to whether the two kosher certification marks were confusingly similar was not identical to the "likelihood of confusion" inquiry required in the plaintiffs' trademark infringement action, we conclude that it was inappropriate for the district court to apply collateral estoppel.

## Conclusion

For the reasons stated above, we vacate the district court's judgment and its permanent injunction in favor of the plaintiffs and we remand the cause to the district court for further proceedings consistent with this opinion.