**Rena LATOUCHE, Plaintiff,**

v.

**NORTH COUNTRY UNION HIGH SCHOOL DISTRICT, Defendant.**

No. 2:99–CV–342.

United States District Court, D. Vermont.

Feb. 9, 2001.

John Christopher Page, Zalinger, Cameron & Lambek, Montpelier, VT, for Rena Latouche, plaintiff.

Pietro J. Lynn, Douglas Dwight Le Brun, Dinse, Knapp & McAndrew, P.C., Burlington, VT, for North Country Union High School District, defendant.

SESSIONS, District Judge.

In this employment discrimination action, defendant North Country Union High School District (the "District") moves for reconsideration of the Court's November 14, 2000, Opinion and Order (Paper 36) [hereafter, "Opinion"] denying the District's motion for summary judgment or, in the alternative, for amendment of the opinion to contain the language needed to make it interlocutorily appealable under 28 U.S.C. § 1292(b). For the reasons below, those motions are denied.

A detailed version of the facts is set forth in the Court's opinion of November 14, 2000, denying the District's motion for summary judgment. Familiarity with that opinion is assumed.

## I. The Motion to Reconsider

"The standard for granting [a motion to reconsider] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Id.*

In the District's memorandum in support of its motion to reconsider, it cites no new controlling decisions nor data that the Court overlooked that could reasonably be expected to alter the conclusion reached by the Court. *See* Mem. in Supp. of Mot. for Recons. and to Amend J. (Paper 38) [hereafter, "Mem. for Recons."]. Rather, it seems to simply seek to relitigate the issues that the Court decided against it in its order denying summary judgment. Thus, the motion to reconsider must be denied.

However, even assuming that the District had met the standard for a motion to reconsider, the Court would adhere to its denial of summary judgment. The District contends that the Court should reconsider its decision because, in refusing to apply collateral estoppel to the arbitrator's decision that Latouche's requests for accommodation were unreasonable or unduly burdensome and required a change in an "essential element" of her job, the Court inserted a wholly new and "invalid" "context requirement" in to the collateral estoppel test.[1] *See* Mem. for Recons. at 1–7. The District baldly asserts that the "the 'context' requirement is an altogether new element that has *never before* been deemed relevant to collateral estoppel," and that "the legal context in which an issue arises is irrelevant to the collateral–estoppel test, and *no known cause has ever suggested otherwise.*" Mem. for Recons. at 2, 6 (emphasis in second quotation added.)

These assertions are flatly untrue. In fact, the Second Circuit has used just this sort of "contextual" approach to reject claims of collateral estoppel. *See Levy v. Kosher Overseers Ass'n of Am., Inc.,* 104 F.3d 38 (2nd cir.1997); *Jim Beam Brands Co. v. Beamish & Crawford Ltd.,* 937 F.2d 729 (2nd Cir.1991). In *Jim Beam,* the Second Circuit vacated a judgment entered for the plaintiff in a trademark infringement case on a motion for summary judgment which has been based on collateral estoppel. *Id.* In the prior proceeding, as to which collateral estoppel was asserted, the United States Court of Appeals for the Federal Circuit had found that there was a "likelihood of confusion" between the defendant's mark and the plaintiff's mark and thus that the defendant could not register its mark with the Trademark Trial and Appeal Board ("TTAB"). *See id.* at 731–32. Based on this finding by the Federal Circuit, the district court granted summary judgment for the plaintiff, concluding that the defendant was barred by collateral estoppel from relitigating that issue. *See id.* at 733.

The Second Circuit disagreed, reasoning that "[i]ssues that may bear the same label are nonetheless not identical if the standards governing them are significantly different." *Id.* at 734. "Though worded similarly, the issue of likelihood of confusion in a cancellation proceeding [the proceeding before the TTAB and appealed to the Federal Circuit] may be different from the issue of likelihood of confusion in an action for infringement." *Id.* The Court then went on to note the different standards applied in cancellation proceedings as compared to infringement actions, and concluded that "the standards by which [likelihood of confusion] is judged are different because *the factual frame of reference used by the adjudicating body is different.*" *Id.* (emphasis added).

The Court in *Levy,* relying on *Jim Beam,* came to the same result. *Levy,* 104 F.3d 38. The defendant in *Levy* had applied to the United States Patent and Trademark Office ("PTO") to register its kosher "certification mark." *See id.* at 40. The plaintiff, who claimed that the defendant's kosher certification mark was too similar to its own, filed an "opposition" to that registration with the TTAB. *See id.* In sustaining the plaintiff's opposition, and refusing the defendant's application for registration, the TTAB concluded that it was "of the firm belief that consumers will be likely to confuse the source of the respective certification services." *Id.* When the defendant continued to use the mark anyway, the plaintiff brought suit, alleging trademark infringement, and after discovery, moved for summary judgment based on the alleged collateral estoppel effect of

---

1. Collateral estoppel applies only if "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *In re PCH Assocs.,* 949 F.2d 585, 593 (2d Cir.1991).

the TTAB decision. *See id.* The district court granted the motion. *See id.*

The Second Circuit vacated and remanded, reasoning that, as in *Jim Beam,* the "likelihood of confusion" issues in the two proceedings were not identical. *See id.* at 43. Because the TTAB did not consider the likelihood of confusion issue *within the context of the marketplace,* as is required in a trademark infringement action, the Second Circuit declined to accord collateral estoppel effect to its decision. *See id.* at 42–43. "For a TTAB or Federal Circuit determination of 'likelihood of confusion' to have collateral estoppel effect in a trademark infringement action, the TTAB or the Federal Circuit must have taken into account, in a meaningful way, the context of the marketplace." *Id.* at 42.

■ While *Jim Beam* and *Levy* were trademark infringement actions and obviously did not involve claims under the ADA or VFEPA, the reasoning of those cases strongly suggests that the Court was correct in refusing to apply collateral estoppel to Latouche's claims. While the arbitrator decided issues that were labeled similarly (if not identically) to those that would need to be decided for a claim under the ADA or VFEPA, the definitions and standards set forth in those statutes [2] did not dictate the arbitrator's conclusions. The arbitrator clearly stated that "the grievant's rights under federal or state disability laws are not arbitrable," and noted that "[f]ederal and state law is not determinative with respect to" the issue of the reasonableness of Latouche's requested accommodations. Award of the Arbitrator, dated Sept. 4, 1997, at 9, 10 (Paper 23, Ex. G) [hereafter, "9/4/97 Award"]. Instead, his determination was based solely on the "just cause" and "health and safety" provisions of the collective bargaining agreement ("CBA") [3] between the District

---

**2.** For instance, the ADA provides that the term "reasonable accommodation" may include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C.A. § 12111(9) (West 2000).

The ADA defines the term "undue hardship" to mean "an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B) [below]." 42 U.S.C. § 12111(10)(A). In subparagraph (B) of the "Undue hardship" paragraph, the ADA provides:

> In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include—
>
> (i) the nature and cost of the accommodation needed under this chapter;
>
> (ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
>
> (iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
>
> (iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10)(B).

VFEPA similarly provides definitions of terms and factors to be considered. Vt.Stat. Ann. tit. 21 § 495d(12) (2000) (defining and providing examples of "reasonable accommodation" and dictating what factors should be considered in the "undue hardship" determination).

**3.** The "just cause" provision of the CBA reads, in pertinent part: "No Teacher will be … dismissed or fail to have his/her contract renewed without just and sufficient cause." CBA, Art. 5.8 (Paper 23, Ex. O). The "health and safety" provision reads: "As provided by applicable state and federal health and safety regulations, teachers shall not be required to work under unsafe or hazardous conditions or to perform tasks which endanger their health, safety or well-being." CBA, Art. 5.5.

and Latouche's union. *See* 9/4/97 Award at 10. Therefore, the issues decided in the arbitration proceeding are simply not the same as those which would be decided in this Court under the ADA and VFEPA, and it would be improper for this Court to apply collateral estoppel effect to the arbitration decision.[4]

Because the issues are not identical, furthermore, as a matter of logic, the Court does not see how Latouche could have had a "full and fair opportunity to litigate" them in the arbitration proceeding, such that the third element of the collateral estoppel test would be satisfied.

The District also asks the Court to reconsider its denial of summary judgment on Latouche's § 1983 claim. While the Court denies the District's motion to reconsider, it notes that had it granted the motion, the Court would have adhered to its original decision on this issue as well. The District asserts that "[t]he Court has interpreted the CBA waiver of an employee's right to bring an action under 16 V.S.A. section 1752 as applying only to post-termination events, thus leaving open a due process claim based on pre-termination events. This reading of the CBA is erroneous." Mem. for Recons. at 7. This reading of the Court's opinion is erroneous. The Court never held that the "CBA waiver" applied to post-termination events. It held that it applied, if at all, to the "decision" ("to suspend, dismiss or non-renew" a teacher) itself, which is literally what the CBA provides. *See* Opinion at 13. The Court sees no reason to expand the scope of the CBA waiver, assuming

that there was one, beyond that which a literal reading of it would suggest.

■ Further, the Court finds the District's "alternative due-process argument"—that Latouche received the pre-termination process that she was due—to be utterly meritless.[5] The District contends that even if Latouche did not waive her § 1752 claim by electing arbitration, she received due process under § 1752 because in a meeting between her and the Superintendent of Schools on June 12, 1996, the Superintendent informed her that the school *had not yet decided* whether it was going to renew her contract. *See* Mem. for Recons. at 9–10. But, § 1752 requires that a public school teacher "whose contract is not to be renewed for the ensuing year for just and sufficient cause shall be notified in writing, setting forth the grounds therefor no later than April 15." Vt.Stat.Ann. tit. 16 § 1752(b) (1989) (amended 1997). The Court does not see how a meeting *on June 12* in which the District said it *did not know* whether it was going to renew her contract can possibly constitute *written notice "setting forth the grounds therefor" before April 15.*

## II. The Motion to Amend

■ The motion to amend the order to make it interlocutorily appealable to the Second Circuit is also denied. In general, the denial of a summary judgment motion is not considered to be a final judgment subject to immediate appellate review under 28 U.S.C. § 1291.[6] *See LaTrieste*

4. The District asserts that there is *no* difference in the "contours" of the arbitrator's determination with respect to the "reasonable accommodation" and "essential functions" issues under the "just cause" and "health and safety" provisions of the CBA and those determinations under the ADA and VFEPA. *See* Mem. for Recons. at 5. Just one look at all of the considerations to be made in deciding claims under the ADA or VFEPA provided by the statutes alone (without even necessarily looking at the case law interpreting those statutes) demonstrates the obvious inaccuracy of the District's assertion.

5. It should be noted that this argument was first raised in the District's reply memorandum in support of its motion for summary judgment, and was not in its original memorandum in support that motion. *See* Mem. in Supp. of Mot. for Summ.J. (Paper 22); Reply Mem. in Supp. of Mot. for Summ.J. at 11–13 (Paper 34). Therefore, it is not clear whether the District has waived this argument.

6. 28 U.S.C. § 1291 reads, in pertinent part: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States, ... except

*Rest. & Cabaret, Inc. v. Village of Port Chester,* 96 F.3d 598, 599 (2d Cir.1996). However, interlocutory appeal may be available under 28 U.S.C. § 1292(b) if a court determines that its decision "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," and so certifies in its order. 28 U.S.C.A. § 1292(b) (West 2000). District courts have substantial discretion in deciding whether to certify a question for interlocutory appeal. *See Brown v. City of Oneonta,* 916 F.Supp. 176, 180 (N.D.N.Y.1996) (citing, inter alia, *D'Ippolito v. Cities Serv. Co.,* 374 F.2d 643, 649 (2d Cir.1967)). Furthermore, the Court should construe the requirements for certification strictly and certify only where exceptional circumstances warrant. *See Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 25 (2d Cir.1990); *United States ex rel. Mikes v. Straus,* 939 F.Supp. 301, 302–03 (S.D.N.Y. 1996); *Brown,* 916 F.Supp. at 180.

The District asserts that there are three "controlling questions of law" which should be certified in this case. The first is whether the arbitration decision based solely on the provisions of the CBA (which did not contain the sorts of considerations set forth in our disability laws) should have collateral estoppel effect as to the plaintiff's ADA and VFEPA claims. The second is whether the so-called "waiver" provision of the CBA that governs "decisions" to terminate employees' contracts would also apply to the pre-termination due process (or lack thereof) that is normally governed by Vt.Stat.Ann. tit. 16 § 1752. The third "controlling question of law" that the District asserts must be certified to the Second Circuit is whether the meeting that took place between Latouche and the Superintendent of Schools on June 12, 1996, in which the Superintendent informed La-

touche that the school had not decided whether to issue her another contract satisfied due process under § 1752, which requires that a teacher receive written notice "no later than April 15." Vt.Stat.Ann. tit. 16 § 1752.

■ None of these issues offered by the district is "a controlling question of law as to which there is substantial ground for difference of opinion" where "an immediate appeal from the order may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b). Rather, as to each of these issues, the Court finds that there is virtually no ground for difference of opinion, and immediate appeal on these issues is much more likely to prolong than advance the litigation.

## III. Conclusion

Wherefore, the Court **DENIES** the District's motion for reconsideration or amendment of the Court's November 14, 2000, opinion.

where a direct review may be had in the Supreme Court." 28 U.S.C.A. § 1291 (West 2000).