# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MIGUEL TORRES, S.A.,
                    *Plaintiff-Appellant,*

v.

CANTINE MEZZACORONA, S.C.A.R.L.;
PRESTIGE WINE IMPORTS
CORPORATION,

                    *Defendants-Appellees.*

No. 99-1935

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-98-115-A)

Argued: April 6, 2000

Decided: September 24, 2004

Before WIDENER, TRAXLER, and KING, Circuit Judges.

---

Vacated and remanded by unpublished per curiam opinion. Judge
Widener wrote a concurring and dissenting opinion.

---

## COUNSEL

**ARGUED:** Cynthia Clarke Weber, SUGHRUE, MION, ZINN,
MACPEAK & SEAS, P.L.L.C., Washington, D.C., for Appellant.
Tom Michael Schaumberg, ADDUCI, MASTRIANI & SCHAUM-
BERG, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Bar-
bara A. Murphy, Gregory C. Anthes, Alfred M. Haas, ADDUCI,

MASTRIANI & SCHAUMBERG, L.L.P., Washington, D.C.; John Charles Thomas, Stephen P. Demm, HUNTON & WILLIAMS, Richmond, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Appellant Miguel Torres, S.A. ("Torres") is a Spanish wine maker that has sold wine in the United States under the trademarks CORONAS and GRAN CORONAS for over 30 years. In 1985, Torres obtained a certificate of federal registration for each mark. The CORONAS mark consists of the word "Coronas" in stylized lettering below a logo that features three crowns in its design. The GRAN CORONAS is registered in stylized form without a superimposed logo.

In 1987, appellee Cantine Mezzacorona, S.C.A.R.L. ("Cantine"), an Italian wine producer, began selling its wine in the United States under the mark Mezzacorona. In 1992, Cantine applied for registration of its Mezzacorona mark, which featured stylized lettering of the word Mezzacorona incorporated into a simple design.

The parties stipulated to a great many facts in this case. The word "corona" means crown in both the Spanish and Italian languages. The words "gran" and "mezza" are size designations. "Gran" means grand or large in Spanish and Italian; "mezza" means half in Italian.

The parties have similar chains-of-distribution for their wines. Torres sells its CORONAS and GRAN CORONAS wines to Paterno Imports Limited, its importer in the United States. Paterno, in turn, sells the wines to regional distributors that distribute the wines to local restaurants and retail wine vendors. Cantine distributes its Mez-

zacorona wines in the United States through Prestige Wine Imports Corporation, which sells to regional distributors who, in turn, sell to local restaurants and retail wine vendors. Torres does not advertise its CORONAS or GRAN CORONAS wines through print media. Cantine, by contrast, has paid to advertise Mezzacorona wines in magazines such as *The Wine Spectator* and *The Wine Enthusiast*. Otherwise, the parties employ identical methods of product promotion, including wine tastings, trade shows, and point-of-sale product information.

In 1992, Cantine applied for registration of the Mezzacorona mark in stylized form for use with its wines. Initially, the United States Patent and Trademark Office ("PTO") refused registration on the grounds that Cantine's proposed mark was "likely to be confused" with the CORONAS and GRAN CORONAS marks previously registered by Torres. J.A. 1577. Cantine, however, successfully sought reconsideration of the PTO's initial decision by suggesting that "crown" or "corona" is commonly used in connection with wines for purposes of International Class 33 registrations. Accordingly, the PTO issued a notice of publication that the mark Mezzacorona was entitled to registration.

Torres, which is engaged with Cantine in trademark disputes outside of the United States, filed an opposition based on its prior use and registration of the CORONAS and GRAN CORONAS marks. After receiving briefs and holding an opposition hearing, the Trademark Trial and Appeal Board (TTAB) concluded that "the use of [Cantine's] mark is likely to cause confusion, mistake or deception" and that the mark thus was not entitled to registration. J.A. 29. The TTAB's analysis focused on two considerations — "the similarity of the goods and the similarity of the marks." J.A. 26. The TTAB explained that "[i]n Board proceedings, 'the question of likelihood of confusion must be determined based on an analysis of the mark as applied to the goods and/or services recited in applicant's application vis-a-vis the goods and/or services recited in opposer's registration, rather than what the evidence shows the goods and/or services to be.'" J.A. 26-27 (quoting *Canadian Imperial Bank v. Wells Fargo Bank*, 811 F.2d 1490 (Fed. Cir. 1987)). Moreover, the TTAB "presume[s] that [the goods at issue] travel in the same channels of trade and that they are purchased by the same end users" if the application itself

does not distinguish the goods from those associated with the senior registered mark. J.A. 27. Focusing on the "visual appearance, pronunciation and connotation" of the opposing marks and the fact that the opposing marks were to be used in the sale of wine, the TTAB agreed with Torres that Cantine's Mezzacorona mark was not entitled to registration. J.A. 29.

Cantine then sought review of the TTAB decision in the United States Court of Appeals for the Federal Circuit. *See* 15 U.S.C. § 1071(a).[1] Concluding that none of the TTAB's factual findings regarding the similarity of the marks or the accompanying goods were clearly erroneous, the Federal Circuit held that the TTAB decision was correct:

> We cannot find fault with the Board's factual determinations that the mark Cantine sought to register was similar in physical appearance, sound, and meaning to the marks registered to Torres, whether the marks are considered as applied for or registered, or as actually used. . . . We conclude, therefore, that the Board's decision to grant the opposition and deny Cantine's registration because its mark was confusingly similar to two previously-registered marks was correct as a matter of law.

*Cantine Mezzacorona v. Torres*, No. 97-1339, at 5-6 (Fed. Cir. Dec. 17, 1997) (unpublished).

Although Cantine was unable to secure registration of the Mezzacorona mark, it continued to sell its wine varieties under the mark. Accordingly, in January 1998, Torres brought this trademark infringement action under the Lanham Act. *See* 15 U.S.C. § 1114. Torres also alleged unfair competition, *see* 15 U.S.C. § 1125, and common law trademark infringement and unfair competition under Virginia law. In

---

[1]Cantine also had the option of seeking direct review of the administrative decision by filing an action in district court, where the aggrieved party can introduce additional evidence and raise additional claims. *See* 15 U.S.C. § 1071(b). The district court's decision is subject to review in the appropriate federal appellate court. Cantine, however, did not elect this option.

addition to damages, Torres sought injunctive relief and attorney's fees.

In March 1998, Torres moved for summary judgment based on a collateral estoppel theory, arguing that Cantine was bound by the administrative decision upheld by the Federal Circuit that the Mezzacorona mark was not registrable because it was likely to cause confusion with the CORONAS and GRAN CORONAS marks. In an order dated April 16, 1998, the district court denied the motion for two reasons. First, one of the defendants in the infringement action, Prestige Wine Imports, was not a party to the proceedings before the TTAB. Second, the district court concluded that "the issue for which [Torres] seeks preclusive effect is not identical to the issue actually decided in the prior adjudication." J.A. 48. The district court explained that "[i]n infringement actions, instead of focusing on the trademarks as they appear in the registration or proposed registration, the issue is whether the actual use of the trademarks is likely to cause confusion." J.A. 49. The district court did not believe that the TTAB or the Federal Circuit undertook the type of "meaningful analysis of the marks in their entire marketplace context" that would entitle the administrative findings to preclusive effect in a trademark infringement action. J.A. 51.

Subsequently, the parties filed cross motions for summary judgment. The district court concluded that "there is no likelihood of confusion between Plaintiff's and Defendants' marks, and that summary judgment in favor of the Defendants is appropriate." J.A. 1937. In so ruling, the district court applied the multi-factor test followed in this circuit:

> To ascertain the likelihood of confusion between two trademarks, we consider . . . (1) the distinctiveness of the senior mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities employed by the parties to transact their business; (5) the similarity of the advertising used by the parties; (6) the defendant's intent in adopting the same or similar mark; and (7) actual confusion.

*Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463 (4th Cir. 1996) (quoting *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527

(4th Cir. 1984)). The district court considered the record before it in light of each of these factors, as well as a few additional factors that we have found to be appropriate in a trademark infringement analysis.[2] Although the district court thoroughly considered the evidence before it under most of the relevant factors, its analysis was deficient in one respect. In considering the "similarity of the two marks" factor, the district court apparently did not consider the factual findings of the TTAB.

We cannot agree with Torres, however, that the TTAB's findings are presumptively correct or entitled to some sort of deference, as they might be if the district court were actually reviewing the TTAB's findings pursuant to an action under 15 U.S.C. § 1071(b).[3] As the district court ably pointed out in rejecting Torres's collateral estoppel argument, the "likelihood of confusion" analysis employed in a TTAB proceeding is different than the "likelihood of confusion" analysis employed in a full-blown infringement action. *See Levy v. Kosher Overseers Ass'n of America, Inc.*, 104 F.3d 38, 41 (2d Cir. 1997). The key to whether any controlling effect is due in an infringement action is whether "the TTAB or the Federal Circuit . . . have taken into account, in a meaningful way, the *context* of the marketplace." *Id.* at 42. Here, the TTAB considered facts relevant only to a portion of the full multi-factor infringement analysis.

Nonetheless, a district court cannot altogether omit consideration of the TTAB's factual determinations that are relevant to a given factor in the infringement analysis. At the very least, such findings should be considered "powerful *evidence*" of the presence (or lack thereof) of one or more of the factors that must be considered in an infringement action. *Cf. America Online, Inc. v. AT & T Corp.*, 243 F.3d 812, 817 (4th Cir. 2001) (internal quotation marks omitted).

---

[2]The district court recognized that the following factors are sometimes relevant: "the quality of the defendant's products"; "the sophistication of consumers"; "the proximity of the products as they are actually sold"; and "the probability that the senior mark owner will . . . enter[ ] the defendant's market." J.A. 1919.

[3]Indeed, Torres has not appealed the district court's April 16, 1998, order rejecting its argument that the findings of the TTAB are entitled to preclusive effect. Thus, we could not address its argument in any event.

Although the TTAB's analysis of whether Cantine's mark was "likely to cause confusion" was not sufficient to settle the infringement question, it engaged in more than a cursory analysis with respect to whether the marks were visually similar or similar in terms of pronunciation. Given the agency expertise of the TTAB, these findings are evidence that is entitled to "due respect" from the district court, *see Pizzeria Uno*, 747 F.2d at 1528 (internal quotation marks omitted), in its analysis of the "similarity of the two marks" factor. "Due respect" obligates the district court to give explicit and meaningful consideration to the bases underlying the TTAB's conclusion that the two marks were similar visually and in terms of pronunciation, and to the impact of these conclusions upon the district court's analysis of one or more of the nonexclusive factors set forth in *Sara Lee*. Because the matter was before the district court on summary judgment, we are constrained to return the matter for consideration of whether the TTAB findings of fact are sufficient to create an issue of material fact that would preclude summary judgment.

By contrast, the TTAB's factual findings that the goods to which the marks were affixed were "identical" and "traveled in the same channels of trade" and "purchased by the same end users" were based simply on the fact that Cantine's application set forth no limitation that would distinguish the goods. Because these findings are not grounded in evidence of actual use that is fundamental in infringement litigation, the district court was not obligated to accord them any special weight.

Thus, we vacate the decision of the district court and remand for further proceedings in light of this opinion.

*VACATED AND REMANDED*

WIDENER, Circuit Judge, concurring and dissenting:

I concur in the vacation of the judgment of the district court and in the remand.

However, I respectfully dissent as to the action which the district court should take on remand. I would require the district court to give

presumptive validity to the findings of the Patent and Trademark Office which have survived both administrative review and review by the Federal Circuit.