F I L E D
United States Court of Appeals
Tenth Circuit

JAN 6 2005

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TEAM TIRES PLUS, LTD.,

        Plaintiff-Appellant,

v.

TIRES PLUS, INC.,

        Defendant-Appellee.

No. 03-2300

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. CIV 01-1124 JP/RLP)**

Michael G. Sanderson (Juan L. Flores, Sheehan, Sheehan & Stelzner, P.A., Albuquerque, New Mexico; J. Todd Timmerman and Duane A. Daiker, Shumaker, Loop & Kendrick, LLP, Tampa, Florida, with him on briefs), Shumaker, Loop & Kendrick, LLP, for Plaintiff-Appellant.

Edward Ricco (Travis R. Collier, DeWitt M. Morgan, and Matthew S. Wermager with him on the brief), Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, for Defendant-Appellee.

Before **McCONNELL** , **HOLLOWAY** , and **TYMKOVICH** , Circuit Judges.

**McCONNELL** , Circuit Judge.

This is a trademark infringement and unfair competition suit under the Lanham Act, 15 U.S.C. §§ 1114 and 1125. The plaintiff, Team Tires Plus, Ltd., owns the federally registered "Tires Plus" trademark; the defendant, Tires Plus Inc., operates a retail tire store of the same name in Albuquerque, New Mexico. The district court dismissed the plaintiff's claims on summary judgment, and we REVERSE.

## I.

The plaintiff began using the name Tires Plus in 1981 for its business of franchising and operating retail tire stores and automobile maintenance centers. In 1983, it registered the Tires Plus trademark for "rendering technical aid and assistance in the establishment of automobile tire stores and automobile maintenance centers."

In 1986, the defendant opened its first retail tire store, also named Tires Plus, in the city of Albuquerque, New Mexico. The plaintiff first objected to this allegedly infringing use through letters to the defendant in May of 1994 and July of 1995. The defendant declined to cease operations under the Tires Plus name, and the plaintiff, which then operated primarily as a Midwestern business in the Minneapolis-St. Paul metropolitan area, decided to refrain from further action until it established operations in New Mexico or a neighboring state.

In 2000, the plaintiff was acquired by Morgan Tires & Auto, Inc. and began a national expansion under the Tires Plus mark. It now operates in twenty-four states, including Colorado and Oklahoma, and states that expansion into New Mexico is imminent. After further demands on the defendant to discontinue use of the Tires Plus name proved fruitless, the plaintiff filed this trademark infringement and unfair competition suit in September 2001. The district court dismissed the plaintiff's claims on summary judgment, and the plaintiff now appeals.

## II.

We review the district court's grant of summary judgment de novo. *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999). Summary judgment is appropriate only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[W]e examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *King of the Mountain*, 185 F.3d at 1089.

The key inquiry in a trademark infringement case is the likelihood of confusion between two similar marks. The Lanham Act provides that one party infringes another's trademark when it uses a similar mark in commerce and "such

use is likely to cause confusion." 15 U.S.C. § 1114. This Court has identified six factors that serve as a guide for evaluating the likelihood of confusion:

(a) the degree of similarity between the marks;

(b) the intent of the alleged infringer in adopting its mark;

(c) evidence of actual confusion;

(d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties;

(e) the degree of care likely to be exercised by purchasers; and

(f) the strength or weakness of the marks.

*King of the Mountain*, 185 F.3d at 1089-90. As with so many of our multi-factor tests, we have emphasized that this list of factors is not exhaustive, that no single factor is dispositive, and that all factors must be considered as an interrelated whole. *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 554 (10th Cir. 1998). At all times, however, "the key inquiry is whether the consumer is 'likely to be deceived or confused by the similarity of the marks.'" *Id.* at 554 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992)).

A.

The district court erred in two important respects, which we will address in turn. First, the district court never analyzed the likelihood of confusion caused by the defendant's use of the Tires Plus name. Instead, it concluded that no jury

-4-

could find trademark infringement because the defendant was not engaged in a "competing use" of the plaintiff's mark. Dist. Ct. Op. 5-6. According to the district court, when parties use identical marks on different products there can be no infringement because use of a mark on a different product is not a "competing use." *Id.* Thus, for example, a defendant who uses a plaintiff's milk trademark on its own competing brand of milk could infringe the plaintiff's mark, but a defendant who uses the same mark on its ice cream could not.

Applying this analysis to the present case, the district court easily found no trademark infringement. The defendant uses the mark for retail tire sales; the plaintiff's mark, as interpreted by the district court, covers only business consulting services. These are not competing uses of the mark, and therefore, according to the district court, there can be no infringement.

The problem with this analysis, however, is that its basic premise—that a trademark provides protection only when the defendant uses the mark on directly competing goods—is no longer good law. Although this notion survived into the early 1900s,[1] it has long since been superceded. Even the 1905 Federal Trademark Act provided protection against the use of marks on non-competing

---

[1]*See, e.g.*, *Borden Ice Cream Co v. Borden's Condensed Milk Co.*, 201 F. 510, 514 (7th Cir. 1912) (finding no infringement of Borden milk by Borden ice cream because the "secondary meaning of a name . . . has no legal significance, unless the two persons make or deal in the same kind of goods").

goods of the "same descriptive class" as the goods covered by the mark. Act of Feb. 20, 1905, 33 Stat. 724, *repealed by* Trademark (Lanham) Act of 1946 § 46(a), 60 Stat. 427, 444. And, as the plaintiff points out, federal courts have long since expanded trademark rights to protect against the use of a mark on non-competing but "related" goods—that is, "any [good] related in the minds of consumers." Appellant's Br. at 16 (citing *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999)); *see also, e.g., Aunt Jemima Mills Co. v. Rigney & Co.*, 247 F. 407, 409-10 (2d Cir. 1917) (finding infringement of Aunt Jemima's trademark on pancake batter by Aunt Jemima syrup on the ground that "goods, though different, may be so related as to fall within" the protections of trademark law); *Yale Elec. Corp. v. Robertson*, 26 F.2d 972, 974 (2d. Cir. 1928) (finding infringement of Yale's trademark on locks by Yale flashlights under the sweeping proposition that "unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful"). Thus, while "the relation in use . . . between the goods" is a relevant factor in the likelihood-of-confusion analysis, *King of the Mountain*, 185 F.3d at 1089—reflecting the fact that use of a mark on a directly competitive good is more likely to create confusion than use of the same mark on a distantly related good—the district court was wrong to treat this factor as dispositive simply because the defendant did not use the mark on competing goods.

B.

The district court's second error concerns its interpretation of the scope of the plaintiff's trademark. The court found that the plaintiff's mark—for "rendering technical aid and assistance in the establishment of automobile tire stores and automobile maintenance centers"—"cannot reasonably be considered to cover franchising." Dist. Ct. Op. 6. According to the district court, the services specified in the registration "are more reasonably interpreted as being in the nature of business consultation; something wholly distinct from franchising." *Id.* This interpretation of the plaintiff's mark, in turn, bolstered the district court's conclusion that the defendant was not infringing the plaintiff's mark.

One look at the USPTO's standard definition of franchising, however, demonstrates that the plaintiff's mark must cover franchising. The USPTO defines franchising as "offering technical assistance in the establishment and/or operation of [indicate specific area of business, e.g., restaurants, shoe stores, car washes]."[2] The services specified in the plaintiff's registration are virtually identical: "rendering technical aid and assistance in the establishment of [specific area of business]." Also illuminating, though not necessary to the outcome, is the

---

[2]This is the definition of franchising first adopted by the USPTO in 1991 and used until July 2004, when it was revised to read: "consultation and assistance in business management, organization and promotion." *See* U.S. Dept. of Commerce, Patent and Trademark Office, *Acceptable Identification of Goods and Services Manual* S-17, *at* http://www.uspto.gov/main/trademarks.htm.

fact that the USPTO specifically recommended the language adopted by the plaintiff. The plaintiff's initial application for registration described the services covered by the mark as "the establishment and/or operation of retail automobile tire stores and automobile maintenance services." The plaintiff also included as a specimen of use its Uniform Franchise Offering Circular for its retail tire store franchise system, thus indicating to the USPTO that its business included franchising. Nevertheless, the USPTO rejected plaintiff's initial application, stating that the recitation of services was too "indefinite" and recommending that, if accurate, the plaintiff should use the formulation it ultimately did: "rendering technical aid and assistance in the establishment of automobile tire stores and automobile maintenance centers." This exchange confirms that the USPTO, which was aware that the plaintiff was engaged in franchising, understood the recommended formulation to cover those operations.

C.

Based on these two errors of law—that trademarks protect only against directly competing uses of the mark and that the plaintiff's mark does not cover franchising—we reverse the district court's grant of summary judgment for the defendant. The appropriate question on remand is whether, considering the guiding factors listed above, the defendant's use of the name Tires Plus is likely to cause confusion. Although the parties have briefed this issue on appeal, this

Court "favor[s] remand to the district court for determination of [likelihood of confusion] as a question of fact." *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 923 n. 2 (10th Cir. 1986). By way of guidance, however, we observe that the relevant confusion under trademark law is not limited to confusion of consumers as to the source of the goods, but also includes confusion as to sponsorship or affiliation, such as a consumer's mistaken belief that a retailer is part of a larger franchising operation. *See Amoco Oil Co. v. Rainbow Snow*, 748 F.2d 556, 558 (10th Cir. 1984); *King of the Mountain*, 185 F.3d at 1090 (distinguishing between source and sponsorship confusion).

## III.

The plaintiff raises one more argument on appeal, the substance of which need not long detain us because it is procedurally barred. The plaintiff owns two other trademarks we have not yet discussed. Both cover retail tire sales, and therefore the district court could not dismiss the infringement claims on the faulty ground that the defendant was not engaged in a competing use of the mark. Instead, the district court dismissed the claims on the ground that the defendant had established a prior-use defense under 15 U.S.C. § 1115(b). (The plaintiff had registered the two marks at issue *after* the defendant opened its retail tire store in 1986.) The problem with this ruling, according to the plaintiff, is that the district court failed to take into account an important fact: the defendant owns *two* retail

tire stores, and only *one* of the stores had been opened before the plaintiff registered its retail mark. The prior-use defense applies "only for the area in which . . . continuous prior use is proved," *id.*, and the defendant never proved that its second retail tire store was part of the same area as the first. Thus, it was possible that the second retail tire store infringed the plaintiff's mark, even if the first was protected by the prior-use defense.

All of this is beside the point, however, because the plaintiff failed to raise this argument in the district court. Although it claims that the district court called for supplemental briefing on the issue after it granted the defendant's motion for summary judgment, this assertion is deceptive. The district court actually requested supplemental briefing on the defendant's counterclaim, namely, that the *plaintiff's* future use of the Tires Plus mark in New Mexico would infringe the *defendant's* common-law proprietary right in the Tires Plus mark. Accordingly, the district court asked the defendant for a memorandum of law setting forth the geographical scope of protection to which it claimed it was entitled. The plaintiff used this as an opportunity to assert the present argument, which it had failed to raise in the summary judgment motions on which the district court had already ruled. Not surprisingly, when the defendant dropped its counterclaims, the district court declined to address the plaintiff's new arguments. "Since [this] claim was not considered or ruled upon by the district court, we will not address it

-10-

on appeal." *Burnette v. Dresser Industries, Inc.*, 849 F.2d 1277, 1285 (10th Cir. 1988).

## IV.

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings consistent with this opinion.