14-3456-cv
International Information Systems Security Certification Consortium, Inc. v. Security University, LLC

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2015

(Argued: August 19, 2015          Decided: May 18, 2016)

Docket No. 14-3456-cv

_____

International Information Systems Security Certification Consortium, Inc.,

*Plaintiff-Counter-Defendant-Appellant,*

v.

Security University, LLC, Sondra Schneider,

*Defendants-Counter-Claimants-Appellees.*

_____

Before: CALABRESI, STRAUB, and POOLER, *Circuit Judges*.

Appeal from United States District Court for the District of Connecticut

(Michael P. Shea, *J.*) granting Security University, LLC, and Sondra Schneider's

motion for summary judgment on International Information Systems Security

Certification Consortium, Inc.'s claims of violations of the Lanham Act, 15 U.S.C.

§ 1051 et seq., including infringement, false designation of origin and false advertising, and trademark dilution, and on its claims for violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq., on the grounds that defendants' use of the certification mark was permissible under the doctrine of "nominative fair use" and that plaintiff's mark is not famous for the purpose of trademark dilution.

We hold that the district court erred in considering source confusion to be the only type of confusion relevant in an infringement claim, and failing to give serious consideration to, for example, confusion as to sponsorship, affiliation, or connection. We hold that the district court further erred in failing to consider that a certification mark can be infringed by a duly certified individual. Finally, we hold that the district court erred in applying solely the Ninth Circuit's test for nominative fair use, instead of applying our Court's *Polaroid* test. Having considered other circuits' nominative fair use tests, as well as our own prior treatment of cases involving nominative use of marks, we hold that nominative fair use is not an affirmative defense to a claim of infringement under the Lanham Act. We further hold that in nominative use cases, in addition to

considering the *Polaroid* factors, courts are to consider (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services.

Accordingly, we vacate the district court's grant of summary judgment on the infringement, false designation of origin and false advertising, and unfair competition claims, and remand for further proceedings consistent with this opinion. We affirm the grant of summary judgment on the trademark dilution claims, which ruling was not challenged on appeal.

Affirmed in part, vacated in part, and remanded.

_____

FATIMA LAHNIN (DAMIAN K. GUNNINGSMITH, *on the brief*), Carmody Torrance Sandak & Hennessey LLP,

3

New Haven, CT, *for Plaintiff-Counter-Defendant-Appellant*.

WM. TUCKER GRIFFITH, McCormick, Paulding & Huber, Hartford, CT, *for Defendants-Counter-Claimants-Appellees*.

SYDNEY FOSTER, Attorney (MARK R. FREEMAN, Attorney, BENJAMIN C. MIZER, Principal Deputy Assistant Attorney General, *on the brief*), Civil Division, United States Department of Justice, Washington, DC; (DEIRDRE M. DALY, United States Attorney, *on the brief*), Office of the United States Attorney for the District of Connecticut; (CHRISTINA J. HIEBER and MARY BETH WALKER, Associate Solicitors, THOMAS W. KRAUSE, Acting Solicitor, *on the brief*), United States Patent and Trademark Office, Alexandria, VA, *for Amicus Curiae United States Patent and Trademark Office*.

POOLER, *Circuit Judge*:

Plaintiff-appellant International Information Systems Security Certification Consortium, Inc. ("ISC²") filed suit against defendants-appellees Security University ("SU") and Sondra Schneider, alleging that SU's use of ISC²'s certification mark violated the Lanham Act, 15 U.S.C. § 1051 et seq., and constituted infringement under 15 U.S.C. § 1114, false designation of origin and false advertising under 15 U.S.C. § 1125(a), and trademark dilution under 15 U.S.C. § 1125(c), and that SU's use of the mark constituted unfair competition

4

under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a et seq. ("CUTPA"). Following cross-motions for summary judgment, the district court granted summary judgment to defendants on all grounds, holding that defendants' use of the certification mark constituted nominative fair use under the Ninth Circuit's test, which our Court has not, to this point, adopted. Critical to its determination that defendants' use of the mark constituted nominative fair use under the Ninth Circuit's test were the district court's misperceptions that the only type of confusion relevant to an infringement claim was confusion as to source and that a certification mark could not be infringed by a duly certified individual.

Having considered other circuits' nominative fair use tests as well as our own prior treatment of claims involving nominative use, we hold that nominative fair use is not an affirmative defense to a claim of infringement under the Lanham Act. We further hold that in cases involving nominative use, in addition to considering the *Polaroid* factors, courts are to consider (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or

5

service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services. When considering these factors, courts must be mindful of the different types of confusion relevant to infringement claims, including confusion as to sponsorship, affiliation, or connection, as well as, when considering a certification mark, the various ways such a mark can be infringed.

Because the district court failed to consider the *Polaroid* factors and because its consideration of the relevant nominative fair use factors was based on incorrect assumptions, we vacate the district court's grant of summary judgment on the infringement claims. Accordingly, we also vacate the grant of summary judgement on the false designation of origin and false advertising claims, which the court decided on the same grounds as the infringement claims, and the CUTPA claims, which were dismissed because they were derivative of the

Lanham Act claims. We affirm the grant of summary judgment on the dilution claims, which ruling was not challenged on appeal. We remand for further proceedings consistent with this opinion.

**BACKGROUND**

**I.      The CISSP® Mark**

**A.      ISC²'s Mark**

ISC² is a non-profit organization that was formed in 1989 to develop standards for the information security industry. In March 1990, ISC² developed a certification program and began using the certification mark "CISSP®" to denote a "Certified Information Systems Security Professional" who has met certain requirements and standards of competency in the information security field, including passing the CISSP® certification examination that ISC² administers.

On March 18, 1997, the United States Patent and Trademark Office registered ISC²'s CISSP® certification mark. The registration stated: "The [CISSP®] certification mark is used by persons authorized by the certifier [ISC²] to certify completion of appropriate work experience and/or successfully passing

examinations as established by the certifier in the field of security of information systems." App'x at 30.

**B.    SU's Alleged Infringement**

SU is a for-profit company that was formed in 1999 by defendant-appellee Sondra Schneider, a CISSP®-certified individual, to provide information security training. SU offers various classes, including a class to prepare individuals for ISC²'s CISSP® certification examination. SU has used the CISSP® mark in connection with certification-specific training courses since 2001. It is undisputed that SU is allowed to use the CISSP® certification mark to indicate that its services are directed at preparing students for the CISSP® certification examination. Furthermore, given the nature of ISC²'s certification mark, SU instructors may accurately identify themselves as being CISSP®-certified, so long as they follow ISC²'s regulations governing the use of the mark.[1]

---

[1] Upon meeting ISC²'s certification standards, ISC² licenses an individual to use the CISSP® mark in accordance with the "(ISC)² ® Regulations Governing Use of Certification/Collective Marks." The Regulations provide that, in using the mark, certified individuals "*may not combine the Logo with any other object*, including, but not limited to, other logos, icons, words, graphics, photos, [or] slogans . . . (i.e., Mixing another Logo with the CISSP[®] Logo to create a variation.)" *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, No. 3:10-CV-01238 (MPS), 2014 WL 3891287, at *2 (D. Conn. Aug. 7, 2014) (alterations in original) (emphasis

However, ISC² objects to some of SU's advertisements, run between 2010 and 2012, which, ISC² argues, misleadingly suggested that SU's instructor, Clement Dupuis, had attained some higher level of certification as a "Master CISSP" or "CISSP Master." These advertisements include the following statements:

- "MASTER THE 10 CISSP DOMAINS with the Master CISSP® Clement Dupuis." App'x at 71.

- "REGISTER NOW to Master the CISSP® Certification with Master CISSP® Instructor Clement Dupuis of www.ccure.org!" App'x at 71.

- "Register for CISSP® Prep class with Master CISSP Clement Dupuis today!" App'x at 76.

- "You are taught by CISSP Master Clement Dupuis, the father of www.ccure.org website." App'x at 76, 83.

- "Security University's CISSP® Prep Class[.] Register for CISSP® Prep class with Master CISSP Clement Dupuis today!" App'x at 78, 83.

- "Attend the BEST CISSP® Prep Class in Europe[.] Master CISSP June 27-30 AMERSTERDAM with MASTER CISSP® Instructor Clement Dupuis[.]" App'x at 88-89.

---

added). Another rule provides that "[t]he Logo may not be used in any manner that expresses or might imply (ISC)²'s affiliation, sponsorship, endorsement, certification, or approval, other than as set forth by the (ISC)² Application Agreement." *Id.* (alteration in original).

SU began using the term "Master" in May 2010. On June 9, 2010, ISC²'s counsel wrote to Schneider asking that she cease using the phrase "Master CISSP" in SU's advertisements. On June 13, 2010, Schneider emailed Marc Thompson, an employee of a third party entity that oversees seminars on ISC²'s behalf, stating that "SU will continue to use the word Master. Master Clement Dupuis is a Male Teacher [and] thus he is a Master according to the dictionary." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC* [hereinafter *IISSCC*], No. 3:10-CV-01238 (MPS), 2014 WL 3891287, at *2 (D. Conn. Aug. 7, 2014) (alteration in original). On July 15, 2010, ISC²'s counsel "again wrote to Ms. Schneider requesting that she and SU cease and desist their improper advertising." *Id.* Although ISC²'s exhibits reveal that SU continued using this terminology at least through February of 2012, SU submitted declarations in support of its motion for summary judgment stating that it no longer uses these terms in its advertising materials.

10

## II. Proceedings Below

### A. ISC²′ Claims

On August 3, 2010, ISC² filed a complaint against SU, alleging that SU's willful actions in refusing to cease its improper use of ISC²'s CISSP® mark constituted infringement under 15 U.S.C. § 1114, false designation of origin and false advertising under 15 U.S.C. § 1125(a), trademark dilution under 15 U.S.C. § 1125(c), and unfair competition under CUTPA. Specifically, ISC² alleged that SU's advertisements: (1) "have the likelihood of deceiving or confusing the public," in violation of 15 U.S.C. § 1114, by suggesting that ISC²'s mark is somehow capable of being "mastered"; (2) constitute a false designation of origin or false advertising by deceiving the public into believing that "Security University's training courses originate with or are sponsored or otherwise approved by the Plaintiff," in violation of 15 U.S.C. § 1125(a); and (3) dilute the CISSP® mark, in violation of 15 U.S.C. § 1125(c). App'x at 19-24. SU filed counterclaims denying each of these allegations and alleging antitrust violations due to ISC²'s alleged misuse of its certification mark.

**B.    Summary Judgment Motions**

In December 2013, the parties cross-moved for summary judgment. On August 7, 2014, the district court granted summary judgment to SU on all counts. In sum, the district court found that ISC²'s claims of infringement and false designation of origin failed under the doctrine of nominative fair use because SU's alleged misuse of ISC²'s certification mark could not give rise to confusion as to the source of SU's services. In conducting its analysis, the district court did not assess likelihood of confusion from Defendants' use of ISC²'s mark based on our Court's test, but rather applied the Ninth Circuit's doctrine of nominative fair use, according to which "[n]ominative fair use applies when all three of the following requirements are met: '[1] the product or service in question must be one not readily identifiable without use of the trademark; [2] only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and [3] the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.'" *IISSCC*, 2014 WL 3891287, at *4 (quoting *New Kids on the Block v. News Am. Publ'g Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)). Finding that Defendants had succeeded on all three

12

elements, the district court ruled that, "[e]ven after drawing all inferences in Plaintiff's favor, . . . no reasonable juror could find that [Defendants' uses] of the CISSP mark suggest that Defendants' training courses were sponsored or endorsed by Plaintiff." *Id.* at *5.

Central to the district court's analysis was its conclusion that "Defendants' addition of the word 'Master' before or after 'CISSP®' . . . . does not implicate the protection afforded by trademark *infringement* laws, which are concerned with 'whether there exists a likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or indeed simply confused, as to the *source* of the goods in question.'" *Id.* at *5-6 (quoting *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 213 (2d Cir. 1985)); *see also id.* at *6 ("There is no allegation and no evidence in the record that anyone was or could have been misled or confused about the identity of the entity offering the 'goods in question,' namely, training courses designed to prepare consumers for Plaintiff's certification exam and taught by Master CISSP® Clement Dupuis or CISSP® Master Clement Dupuis."); *id.* ("Because a certification mark is intended to signal a quality-related characteristic of the good, rather than source or origin, . . . it is hard to imagine a

13

case in which use of a certification mark by a person who has met the requirements for certification would likely lead to confusion as to source or origin, or would not be a nominative fair use."). Indeed, although the district court asserted that no reasonable juror could find sponsorship or endorsement, its conclusion was based entirely on the fact that the advertisements did not "suggest[] that (ISC)² itself is offering the classes." *Id.* at *5.[2]

Although not necessary to its conclusion, the district court reasoned that the disclaimers SU placed at the bottom of some of its advertisements further served to reduce any suggestion that their classes were sponsored or endorsed by ISC². Several, but not all of SU's advertisements, included one or more of the following disclaimers:

- SU CISSP® Prep classes are not endorsed, sponsored or delivered by (ISC)²®.

- CISSP® is a registered trademark of (ISC)²®.

- CISSP® is a registered trademark of (ISC)²® (International Information Systems Security Certification Consortium) Inc.

---

[2] Our analysis is not changed by the district court's passing note that "attaching the word 'Master' to 'CISSP®' does not 'suggest *sponsorship or endorsement*' by (ISC)²." *IISSCC*, 2014 WL 3891287, at *5 (emphasis added).

14

- CISSP® is a registered trademark of (ISC)²® Inc. (International Information Systems Security Certification Consortium) Inc. The materials for the Security University classes have been developed specifically for SU and are not endorsed, sponsored or delivered by (ISC)²®. The goal of the course is to prepare security professionals for the CISSP® exam by covering the ten domains defined by (ISC)²®.

*Id.* at *7.

Without further analysis, the district court concluded that ISC²'s claims for false advertising or false designation of origin, in violation of 15 U.S.C. § 1125(a), similarly failed under the doctrine of nominative fair use. The district court then concluded that ISC²'s trademark dilution claims failed because ISC² had failed to raise a genuine dispute of material fact as to whether its CISSP® certification mark was sufficiently famous to warrant protection from trademark dilution. Finally, the district court dismissed the CUTPA claims as concededly derivative of the Lanham Act claims.

**DISCUSSION**

**I.    Certification Marks**

A "certification mark," such as CISSP®, is a special sub-category of marks which, unlike other trademarks, is intended to be used by those *other than its*

15

*owner*, to indicate the quality, accuracy, or other characteristics of the goods or services. *See* 15 U.S.C. § 1127 (defining "certification mark" as "any word, name, symbol, or device, or any combination thereof-- (1) used by a person other than its owner, or (2) which its owner has a bona fide intention to permit a person other than the owner to use in commerce and files an application to register on the principal register established by this chapter, to certify regional or other origin, material, mode of manufacture, quality, accuracy, or other characteristics of such person's goods or services or that the work or labor on the goods or services was performed by members of a union or other organization"). The CISSP® mark is meant to certify quality and characteristics, that is, that the security information professional bearing the CISSP® mark meets ISC$^2$'s standards and has passed its competency test.

In spite of the differences between certification marks and other types of marks, the Lanham Act provides that certification marks are generally entitled to the same protection from infringement as are trademarks.

[S]o far as they are applicable, . . . certification marks, . . . shall be registrable under this chapter, in the same manner and *with the same effect* as are trademarks, by persons . . . exercising legitimate control over the use of the marks sought to be registered, even though not

16

possessing an industrial or commercial establishment, and when registered they *shall be entitled to the protection provided in this chapter in the case of trademarks*, except in the case of certification marks when used so as to represent falsely that the owner or a user thereof makes or sells the goods or performs the services on or in connection with which such mark is used.

15 U.S.C. § 1054 (emphases added); *see also Am. Bd. of Psychiatry and Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1, 3 (1st Cir. 1997) ("A registered certification mark receives the same protection as a trademark."); *Levy v. Kosher Overseers Ass'n of Am., Inc.*, 104 F.3d 38, 39 (2d Cir. 1997) (stating that "[c]ertification marks are generally treated the same as trademarks for purposes of trademark law").

**II.     Infringement Claims**

To prevail on a claim of certification mark infringement, "a plaintiff must show, first, that its mark merits protection, and, second, that the defendant's use of a similar mark is likely to cause consumer confusion." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004). Defendants do not dispute that ISC2's mark merits protection; they merely argue that their use of the mark is non-infringing.

"A plaintiff's trademark is protected by federal law against infringement by use of colorable imitations of the mark which are 'likely to cause confusion, or

17

to cause mistake, or to deceive.'" *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 502 (2d Cir. 1996) (quoting 15 U.S.C. § 1114(1)). In determining whether there is a likelihood of consumer confusion for trademark infringement, we apply the eight-factor balancing test set forth in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir. 1961).

> The eight factors are: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009). "The application of the *Polaroid* test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Starbucks Corp.*, 588 F.3d at 115). As we stated in *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384 (2d Cir. 1995),

> the *Polaroid* factors are not, of course, "exclusive" and should not be applied "mechanically." No single factor is dispositive, and cases may certainly arise where a factor is irrelevant to the facts at hand. But it is

18

incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why.

*Id.* at 400 (citations omitted) (quoting *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir. 1993)) (reversing judgment because district court "did not always articulate the basis for its conclusions regarding the various *Polaroid* factors or whether it considered all factors relevant to the case").

## A.    Types of Confusion Relevant to Infringement Claims

The district court held that the only type of confusion relevant in determining infringement is confusion as to *source*. This is incorrect; protection is not exclusively limited for any type of mark to cases in which there may be confusion as to source.[3] Rather, "[t]he modern test of infringement is whether the defendant's use [is] likely to cause confusion *not just as to source*, but also as to sponsorship, affiliation or connection." 4 McCarthy on Trademarks and Unfair Competition [hereinafter "McCarthy"] § 23:76 (4th ed.) (emphasis added). Indeed, our Court has previously observed that in 1962 Congress amended 15 U.S.C. § 1114, the Lanham Act provision that provides penalties for

---

[3] Indeed, considering only source confusion would make little sense in the context of certification marks, as certification marks are generally not used to designate source at all.

infringement, to "broaden liability" from the prior "statutory requirement [that] confusion, mistake, or deception applied only with respect to purchasers as to the source of origin of such goods or services." *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 136 (2d Cir. 2009) (internal quotation marks omitted). That provision now penalizes a person who

> use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use *is likely to cause confusion, or to cause mistake, or to deceive . . . .*

15 U.S.C. § 1114(1)(a) (emphasis added). As is plain from this statutory text, the Act's protection against infringement is not limited to any particular type of consumer confusion, much less exclusively to confusion as to source. Rather, the Lanham Act protects against numerous types of confusion, including confusion regarding affiliation or sponsorship. *See Rescuecom Corp.*, 562 F.3d at 128 ("Sections 32 and 43 of the Act, which we also refer to by their codified designations, 15 U.S.C. §§ 1114 & 1125, *inter alia*, impose liability for unpermitted 'use in commerce' of another's mark which is 'likely to cause confusion, or to cause mistake, or to deceive,' § 1114, 'as to the affiliation . . . or as to the origin,

20

sponsorship or approval of his or her goods [or] services . . . by another person.' § 1125(a)(1)(A)." (alterations in original)); *Hormel Foods Corp.*, 73 F.3d at 502 ("The central inquiry is whether there is a 'likelihood of confusion,' a 'likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question,' or that there may be confusion as to *plaintiff's sponsorship or endorsement of the junior mark*." (emphasis added) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978))); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981) ("On the question of competition and the likelihood of confusion, it is not necessary that Warner Bros. actually manufacture the toy cars, but merely that a confusion as to manufacture *or sponsorship* result." (emphasis added)); *Dall. Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204-05 (2d Cir. 1979) ("Appellants read the confusion requirement too narrowly. In order to be confused, a consumer need not believe that the owner of the mark actually produced the item and placed it on the market. The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." (citations omitted)); *see also Team Tires Plus,*

21

*Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 835 (10th Cir. 2005) ("[T]he relevant confusion under trademark law is not limited to confusion of consumers as to the source of the goods, but also includes confusion as to sponsorship or affiliation, such as a consumer's mistaken belief that a retailer is part of a larger franchising operation."); *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1228-29 (7th Cir. 1993) ("[C]ustomer 'confusion' need not be restricted to a mistake regarding the source of the goods; the court should also consider whether the customer would believe that the trademark owner sponsored, endorsed or was otherwise affiliated with the product.").

This broader prohibition on consumer confusion as to sponsorship or approval is also made explicit in Section 43 of the Lanham Act, which prohibits false advertising and false designation of origin by providing for civil penalties to a person injured by:

> Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the *affiliation, connection, or association* of such

person with another person, or as to the origin, *sponsorship, or approval* of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . .

15 U.S.C. § 1125(a)(1) (emphases added).

Indeed, our case law demonstrates that consumer confusion is plainly not limited to source confusion. For example, in *Weight Watchers International, Inc. v. Luigino's, Inc.*, 423 F.3d 137 (2d Cir. 2005), we recognized that Weight Watchers was likely to succeed on its claim that a frozen food manufacturer had infringed its registered trademark in the term "Points" by prominently displaying the Weight Watchers points value on the packages of its frozen meals. In that case, it was clear from the packaging that Luigino's was the source of the actual goods—i.e. the frozen meals. Nonetheless, Weight Watchers could succeed on its claim for trademark infringement by showing "that the use of the term 'Points' on the front of the package was likely to confuse consumers into believing that Weight Watchers had determined the point values or *otherwise endorsed* the Luigino's products." *Id.* at 144 (emphasis added). Moreover, we have held that there may

23

be consumer confusion based on the misuse of a trademark, even where it is conceded that the plaintiff's mark accurately designated the source of goods. *See Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68, 73 (2d Cir. 1987) (holding unauthorized importation and sale of Cabbage Patch dolls manufactured in Spain with the foreign language adoption papers and birth certificate infringed the plaintiff's trademark in Cabbage Patch dolls "even though the goods do bear [plaintiff's] trademark and were manufactured under license with [the plaintiff]," because plaintiff's "domestic good will is being damaged by consumer confusion caused by the importation of the [Spanish] dolls," which were materially different from American dolls). The district court therefore erred in applying its narrow conception of confusion relevant to infringement claims.

**B.      Infringement of Certification Marks**

In addition to erroneously treating source confusion as the only relevant type of confusion, the district court also took an erroneously narrow view of how certification marks can be infringed. There are numerous ways in which a certification mark can be infringed. Two of the most well-established "[e]xamples

24

of infringement of a certification mark are: the use of the mark in a resume of a professional who is in fact not certified by the organization that is the owner of the mark; and the use of the mark on goods that have not in fact been certified." McCarthy § 19:92.50 (footnotes omitted); *see, e.g., Am. Bd. of Psychiatry and Neurology, Inc.*, 129 F.3d at 6 (holding that defendant, a physician and psychiatrist who claimed in a resume and in court that she was certified by the American Board of Psychiatry and Neurology, but was not in fact certified, likely infringed plaintiff's registered certification mark). In addition, it is clear that a competing certifier may infringe a certification mark by using a certification mark confusingly similar to the certification mark of another certifying body. *See, e.g., Levy*, 104 F.3d at 39 (reasoning that "[b]ecause the various kosher certification agencies employ their own standards for accepting products as kosher, according to their particular interpretation of Judaism's dietary requirements, it is important for a consumer to recognize the marks of the certification agencies that he trusts," and discussing whether the alleged infringing mark is "confusingly similar" to the plaintiffs' mark); *Am. Angus Ass'n v. Sysco Corp.*, 829 F. Supp. 807, 819 (W.D.N.C. 1992) (enjoining defendant's use of "Supreme Certified Angus

Beef" as likely to cause confusion with plaintiff's certification "Certified Angus Beef," because "there is almost a certainty that customers will be led to believe [Certified Angus Beef] has introduced a new line").

But these are not the exclusive means of infringing on a certification mark. Although the district court expressed skepticism that "it is possible for the CISSP® certification mark to be infringed by a party who has met all the requirements for certification," *see IISSCC*, 2014 WL 3891287, at *6, the Trademark Board has previously considered almost precisely this issue and determined that infringement is possible under these circumstances. The Trademark Board reviews applications to register or cancel trademarks, including certification marks, and it therefore considers whether an application for a new, or junior, mark should be denied on the ground that it is likely to cause confusion with a preexisting, or senior, mark. The context in which the Trademark Board considers likelihood of confusion is therefore somewhat different. *See Levy*, 104 F.3d at 41-42 (explaining that the Trademark Board considers only the "registrability of the applicant's mark exactly as shown in the application and only as to the goods listed, *regardless of actual usage*," and

26

determinations are often made "only upon a limited comparison of the registered or applied-for format and goods without regard for their marketplace manner of use," whereas the *Polaroid* factors apply in actions for trademark infringement (quoting *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 734 (2d Cir. 1991))). Nonetheless, the Trademark Board's reasoning is instructive.

The Trademark Board has determined that the junior user's certification status is irrelevant to whether it causes a likelihood of confusion with a senior certification mark. The Trademark Board "has indicated that even where a defendant's product contains ingredients which have been certified by the owner of a certification mark, the defendant's incorporation of that certification mark into its own composite trademark might be likely to cause confusion as to sponsorship, affiliation or connection." McCarthy § 19:92.50 (citing *Institut Nat'l Des Appellations d'Origine v. Brown-Forman Corp.*, 47 U.S.P.Q.2d 1875 (T.T.A.B. 1998) (denying summary judgment because it is possible that the applicant's "Canadian Mist and Cognac" trademark for a blend of Canadian whiskey and genuine Cognac brandy would create a likelihood of confusion with a preexisting certification mark for "Cognac")). For example, in a precedential

decision, the Trademark Board refused to register a new certification mark "Darjeeling Nouveau" for tea, because it was likely to cause consumer confusion with the preexisting, registered certification mark "Darjeeling," for tea certified from the Darjeeling District of West Bengal, India. *See Tea Bd. of India v. Republic of Tea, Inc.*, 80 U.S.P.Q.2d 1881 (T.T.A.B. 2006). The Trademark Board held that the fact that applicant's "Darjeeling Nouveau" tea was, in all circumstances, made entirely of genuine, certified "Darjeeling" tea, and merely purported to meet *higher* standards as the "first press," was irrelevant. *Id.* ("[T]he fact that a user's products may be genuine, whether in whole or in part, is simply irrelevant and is not a defense to a likelihood of confusion claim.").

Accordingly, although a person who is not certified can infringe a certification mark by engaging in unlicensed use of the mark, this is not the only manner of misusing a certification mark that is cognizable in an infringement suit. Just as it would infringe the "Darjeeling" certification mark for a competitor to identify genuine, certified Darjeeling tea with its own composite mark "Darjeeling Nouveau," *id.*, the district court erred in failing to consider that SU

28

may have infringed on ISC²'s certification mark by identifying its certified instructor as "Master CISSP" and "CISSP Master."

Importantly, it is not a prerequisite to ISC²'s claim of infringement "that the defendant was using the allegedly infringing content 'as a [certification] mark.'" *Kelly-Brown*, 717 F.3d at 308. Accordingly, SU's use of the terms "CISSP Master" and "Master CISSP" can infringe ISC²'s certification mark, even if SU is not attempting to compete with ISC² by offering its own "CISSP Master" or "Master CISSP" certification. Nor is it required that ISC² actually offer a "CISSP Master" or "Master CISSP" certification to succeed. *See Gay Toys, Inc.*, 658 F.2d at 79 ("On the question of . . . the likelihood of confusion, it is not necessary that [the plaintiff] actually manufacture the toy cars [the defendant created to resemble the cars in the plaintiff's movie], but merely that a confusion as to . . . *sponsorship* result." (emphasis added)). Even though neither ISC² nor SU offers a "Master CISSP" or "CISSP Master" certification, "customers [may] be led to believe [ISC²] has introduced a new line" of certifications. *Am. Angus Ass'n*, 829 F. Supp. at 819; *see also* McCarthy § 23:50 ("The Trademark Board has said that the general rule is that a subsequent user may not avoid likely confusion by

29

appropriating another's entire mark and adding descriptive or non-distinctive matter to it." (footnote omitted)).[4] As in all infringement suits in this Circuit, the relevant inquiry is simple: whether there is "a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question, or that there may be confusion as to plaintiff's sponsorship or endorsement of the junior mark." *Hormel Foods Corp.*, 73 F.3d at 502 (internal quotation marks omitted).

### C. Likelihood of Confusion in Nominative Use Cases

Having determined that the district court erred in considering only source confusion and erroneously limiting the ways in which certification marks can be infringed, we turn to the question of how the district court should assess likelihood of confusion on remand.

As discussed above, our Court's test for assessing likelihood of confusion is the *Polaroid* test. As noted, courts are to consider the following eight non-exclusive factors:

[4] On the other hand, these facts might be taken into account in assessing such *Polaroid* factors as "proximity of the products and competitiveness with one another" and the possibility that the "senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product." *Starbucks Corp.*, 588 F.3d at 115.

30

(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Starbucks Corp.*, 588 F.3d at 115. This Court has repeatedly urged district courts to apply the *Polaroid* factors even "where a factor is irrelevant to the facts at hand." *Arrow Fastener Co.*, 59 F.3d at 400 ("[I]t is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why.").

The district court, rather than applying the *Polaroid* factors, applied the Ninth Circuit's test which applies in cases of nominative use of marks. Nominative use is a "use of another's trademark to identify, not the defendant's goods or services, but the plaintiff's goods or services." McCarthy § 23:11. It is called "nominative" use "because it 'names' the real owner of the mark." *Id.* "The doctrine of nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or

31

affiliation." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010) (alterations and internal quotation marks omitted). Because the *Polaroid* factors—or their analogues in other circuits—are not easily applied in cases of nominative use, various courts have created new tests to apply in such circumstances. The Ninth Circuit's nominative fair use doctrine stems from its decision in *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992). In that case, a newspaper conducted a survey in connection with a story about a concert by the pop music group "New Kids on the Block," asking readers "Which of the five is your fave?" and invoking the name of the group. *Id.* at 304. The Ninth Circuit held that this was a non-infringing "nominative use of a mark" which did not imply sponsorship or endorsement by the trademark owner. The Ninth Circuit adopted the following test for nominative fair use:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id.* at 308 (footnote omitted). Other circuits have adopted variations of this test. *See, e.g.*, *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 424 (1st Cir. 2007);

*Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 220-22 (3d Cir. 2005); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 546-47 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001).

In the Ninth Circuit, nominative fair use is not an affirmative defense because it does not protect a defendant from liability if there is, in fact, a likelihood of consumer confusion. Rather, the nominative fair use test replaces the multi-factor test that the Ninth Circuit typically employs to determine consumer confusion, i.e., it replaces the Ninth Circuit's analogue to the *Polaroid* test. *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150-51 (9th Cir. 2002); *accord Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003); *see also* McCarthy § 23:11 ("The Ninth Circuit, in crafting a separate category of a 'nominative fair use' analysis, created a specialized tool to analyze a certain class of cases of alleged infringement. . . . The Ninth Circuit did not intend nominative fair use to constitute an affirmative defense.").

By contrast, the Third Circuit, another court to have developed a nominative fair use doctrine, affords defendants broader protection. The Third

33

Circuit treats nominative fair use as an affirmative defense that may be asserted by the defendant despite a likelihood of consumer confusion. To be entitled to protection based on the affirmative defense, a defendant must show

> (1) that the use of plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service; (2) that the defendant uses only so much of the plaintiff's mark as is necessary to describe plaintiff's product; and (3) that the defendant's conduct or language reflect the true and accurate relationship between plaintiff and defendant's products or services.

*Century 21 Real Estate Corp.*, 425 F.3d at 222.

To this point, this Court has not adopted either the Ninth Circuit or the Third Circuit's rule on nominative fair use. *See Tiffany (NJ) Inc.*, 600 F.3d at 102 (affirming the district court's decision that applied the doctrine of nominative fair use on other grounds); McCarthy § 23:11. Nonetheless, district courts within our Circuit frequently use the Ninth Circuit's formulation. *See, e.g., Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 177-78 (N.D.N.Y. 2011); *Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246, 269-70 (N.D.N.Y. 2008) (collecting cases); *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 500-02 (S.D.N.Y. 2008); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, No. 07 CIV. 7371 (JGK), 2008 WL 2696168, at *11 (S.D.N.Y. July 7, 2008); *Merck & Co. v. Mediplan Health*

34

*Consulting, Inc.*, 425 F. Supp. 2d 402, 413 (S.D.N.Y. 2006). Further, as discussed

below we have endorsed the principles underlying the nominative fair use

doctrine. *See Tiffany (NJ) Inc.*, 600 F.3d at 102-03; *Dow Jones & Co. v. Int'l Sec. Exch.,*

*Inc.*, 451 F.3d 295, 308 (2d Cir. 2006).

Having considered the case law, as well as the positions of the United

States Patent and Trademark Office,[5] we reject the Third Circuit's treatment of

nominative fair use as an affirmative defense. The Lanham Act sets forth

numerous affirmative defenses to infringement claims that can be asserted even

if the plaintiff has established likelihood of confusion. *See* 15 U.S.C. § 1115(b). The

Third Circuit's basis for treating nominative fair use as an affirmative defense is

---

[5] We invited the United States Patent and Trademark Office to submit a letter brief regarding several issues to be decided in this appeal. It did so on August 14, 2015 and August 31, 2015, through submissions signed by the United States Patent and Trademark Office and the Department of Justice. "We consider the views expressed therein for persuasive value." *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 178 (2d Cir. 2011); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("We consider that the rulings, interpretations and opinions of the [agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").

35

that the Supreme Court has treated classic, or descriptive, fair use as an affirmative defense. *See Century 21 Real Estate Corp.*, 425 F.3d at 222 (citing *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118-20 (2004)). But in treating descriptive fair use as an affirmative defense, the Supreme Court was interpreting a provision of the Lanham Act which provided that claims of infringement are subject to various defenses, including

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin . . . .

15 U.S.C. § 1115(b)(4); *see KP Permanent Make-Up, Inc.*, 543 U.S. at 118-20 (analyzing 15 U.S.C. § 1115(b)(4) and ultimately concluding that Congress intended descriptive fair use to be an affirmative defense). That is, under the Supreme Court's interpretation, the Lanham Act explicitly provides that descriptive fair use is an affirmative defense. And nominative fair use cannot fall within § 1115(b)(4)'s language, as nominative fair use is not the use of a name, term, or device otherwise than as a mark which is descriptive of and used merely to describe the goods or services of the alleged infringer. *See Cosmetically Sealed*

36

*Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997) (finding descriptive fair use when the alleged infringer engaged in a "non-trademark use of words in their descriptive sense"). Nominative use involves using the mark at issue *as a mark* to specifically invoke the mark-holder's mark, rather than its use, other than as a mark, to describe the alleged infringer's goods or services. If Congress had wanted nominative fair use to constitute an additional affirmative defense, it would have provided as such. We therefore hold that nominative fair use is not an affirmative defense to an infringement claim.

We turn next to the question of whether we should adopt a nominative fair use test, either to supplant or to replace the *Polaroid* test. Although we see no reason to replace the *Polaroid* test in this context, we also recognize that many of the *Polaroid* factors are a bad fit here and that we have repeatedly emphasized that the *Polaroid* factors are non-exclusive. And although we have not expressly rejected or accepted other circuits' nominative fair use tests, we "have recognized that a defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." *Tiffany (NJ) Inc.*, 600 F.3d at

37

102-03. *See also Dow Jones & Co.*, 451 F.3d at 308 ("While a trademark conveys an exclusive right to the use of a mark in commerce in the area reserved, that right generally does not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product.").

Because we believe that the nominative fair use factors will be helpful to a district court's analysis, we hold that, in nominative use cases, district courts are to consider the Ninth Circuit and Third Circuit's nominative fair use factors, in addition to the *Polaroid* factors.[6] When considering a likelihood of confusion in nominative fair use cases, *in addition to* discussing each of the *Polaroid* factors, courts are to consider: (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest

---

[6] As we have emphasized with reference to the *Polaroid* factors, this combination of factors is not exclusive, and other factors may be considered where relevant.

38

sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services.

When assessing the second nominative fair use factor, courts are to consider whether the alleged infringer "step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often, in terms of size, emphasis, or repetition." McCarthy § 23:11; *see, e.g., PACCAR Inc. v. TeleScan Technologies, L.L.C.*, 319 F.3d 243, 256 (6th Cir. 2003) ("Using [the plaintiff's] trademarks in its domain names, repeating the marks in the main titles of the web sites and in the wallpaper underlying the web sites, and mimicking the distinctive fonts of the marks go beyond using the marks 'as is reasonably necessary to identify' [the plaintiff's] trucks, parts, and dealers."), *abrogated on other grounds by KP Permanent Make-Up, Inc.*, 543 U.S. at 116-17; *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003) (considering the fact that the defendant used the mark "'The Beach Boys' more prominently and boldly" than the rest of its name "The Beach Boys Family and Friends" such that event organizers and members of the audience were confused about who was

39

performing); *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 804 (9th Cir. 2002) (holding that defendant's repeated use of the abbreviation "PMOY '81" meaning "Playmate of the Year 1981" on the background/wallpaper of her website failed to establish nominative fair use because "[t]he repeated depiction of "PMOY '81' is not necessary to describe [the defendant]"), *abrogated on other grounds by Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003); *cf. Swarovski Aktiengesellschaft v. Building No. 19, Inc.*, 704 F.3d 44, 51-52 (1st Cir. 2013) (reversing preliminary injunction restricting discount retailer from using large size font in advertising sale of "Swarovski" crystal figurines because lower court erred by assuming that retailer used "more of the mark than necessary" without determining if large size font was likely to cause consumer confusion).

Additionally, when considering the third nominative fair use factor, courts must not, as the district court did here, consider only source confusion, but rather must consider confusion regarding affiliation, sponsorship, or endorsement by the mark holder. *See Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 213 n.1 (2d Cir. 2003) (vacating dismissal of Lanham Act claims and holding nominative fair use did not supply alternative grounds for dismissal because

defendant's "hyperlink connection to a page of endorsements suggests affiliation, sponsorship, or endorsement by" the plaintiff (internal quotation marks omitted)).

We therefore remand for reconsideration of the *Polaroid* factors in addition to the nominative fair use factors, keeping in mind the numerous types of confusion that are relevant to an infringement analysis other than mere source confusion and the numerous ways in which a certification mark may be infringed.[7]

## III.   Remaining Claims

We now turn to ISC²'s remaining claims. First, we affirm the district court's ruling on ISC²'s trademark dilution claims, which was not challenged on appeal. ISC² argues that the district court's rulings on the other claims—the false designation of origin and the CUTPA claims—should be vacated for the same reasons as the court's ruling on the infringement claims. We agree. The district court decided the false designation of origin claims in the same erroneous manner in which it decided the infringement claims, and its ruling must

---

[7] The district court may, in its discretion, invite further briefing on these issues before ruling again on summary judgment.

therefore be vacated. Finally, the district court held that the CUTPA claims were derivative of the Lanham Act claims and, because the Lanham Act claims failed, so did the CUTPA claims. Because we reinstate the Lanham Act infringement and false designation of origin claims, we also vacate the district court's summary judgment ruling on the CUTPA claims.

**CONCLUSION**

For the foregoing reasons, we VACATE the district court's grant of summary judgment on ISC²'s infringement, false designation of origin, and CUTPA claims, and REMAND for further proceedings consistent with this opinion. We AFFIRM the district court's grant of summary judgment on ISC²'s trademark dilution claims.